FREDERICK R. WILSON *et al.*

*v.*

MARGARET McKENNA.

1. RECORDER'S COURT OF CHICAGO—*transferring causes therefrom, under act of February* 15, 1855. Under the act of 1855, requiring causes commenced in the recorder's court of the city of Chicago, where the amount in controversy shall exceed one hundred dollars, to be transferred, on the written request of the defendant, to the circuit court of Cook county, or the Cook county court of common pleas, the amount in controversy is to be determined by the specific sum claimed in the declaration, whether claimed as debt or damages.

2. So, on an application for the transfer of an action of ejectment commenced in the recorder's court, the right to such transfer depends, not upon the *value* in controversy, but upon the *amount* in controversy, which is determined by the damages claimed in the declaration.

3. EVIDENCE—*unstamped instruments.* The act of Congress, rendering invalid as evidence instruments not stamped, is applicable only when such instruments are offered as evidence in the courts of the United States; an instrument made evidence by our State laws in the courts of the State can not be invalidated for such purpose by an act of Congress.

4. PARTIES—*where feme sole plaintiff marries pending the suit.* Where, pending an action commenced by a *feme sole*, the plaintiff marries, judgment may be rendered in her favor by her original name, unless a change of name be brought, in some way, to the notice of the court.

5. TAX TITLE—*necessity and requisites of the notice to be given by the purchaser.* The notice required by section 4 of article 9, of the constitution of 1848, to be given by a purchaser at a tax sale, is a condition precedent to his right to have a deed, and when he seeks to rely upon his tax deed, as paramount title, he must show a compliance with the requirements of that section.

6. The notice in such case, should correctly state when the time of redemption will expire; so where a notice stated the day on which the right of redemption would expire to be the same as that on which it alleged the sale was made, the notice was held void.

7. SAME—*who may question a tax title.* It is not essential that a party should show he has paid all the taxes due and assessed upon land in order that he may question a tax title which is sought to be set up against him. The provision of the general revenue law requiring such payment (Rev. Stat. 1845, 448, sec. 73) has long remained a dead letter upon the statute book, and is not considered of any validity, the effect of it being to compel a man to buy justice.

APPEAL from the Recorder's Court of the city of Chicago; the Hon. WILLIAM K. McALLISTER, Judge, presiding.

The opinion states the case.

Messrs. JONES & GARDNER, for the appellants.

Mr. ARTHUR W. WINDETT, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment in the recorder's court of the city of Chicago, brought by Margaret McKenna against Frederick R. Wilson and others, to recover the possession of lot 3, in the north part of the southeast quarter of section 20, in township 39, south range 14 east, in the city of Chicago.

There was a verdict and judgment for the plaintiff, to reverse which the defendant appeals to this court, and makes several points, which we will notice.

The first point is, that the recorder's court should have transferred the cause on the affidavit filed by the defendant, and on his motion.

The statute under which the motion was made, provides that in all cases where any suit, either in law or in chancery, shall be commenced in the recorder's court, and the amount in controversy shall exceed one hundred dollars, and the defendant

shall, at any time before the trial, file in the court a written request to have such suit transferred, either to the circuit court of Cook county, or to the Cook county court of common pleas, all further proceedings in the recorder's court shall thereupon cease, and the suit shall be transferred, agreeable to the request, and in the manner required by law in cases of change of venue.

It is insisted by the appellee that the act does not apply to this case, as the amount in controversy, to be determined by the damages claimed in the declaration, did not amount to one hundred dollars. The title, not the value of the property was in question. The declaration laying the damages determines, in such case, the amount in controversy.

To remove a cause to a court of the United States, the value in controversy determines the right to a removal. By this act of the legislature, it is the amount in controversy, the specific sum, whether claimed as debt or damages. There was no error in refusing to transfer the cause. The amount in controversy was not shown to exceed one hundred dollars.

The second point made by appellant is, the court refused to allow the question to be asked appellee, who was sworn as a witness, what was the consideration for the deed.

Appellant insists the question was a proper one, on which to base an objection to the deed for want of a proper stamp. We can not perceive the affinity between the question and the proposed objection to be made. The objection would be available, if at all, no matter what the consideration may have been; but it could not be made available under repeated decisions of this court, this court holding that an instrument made evidence by our State laws in the courts of the State can not be invalidated for such purpose by an act of Congress. The party omitting the stamp, with a view to deprive the government of the tax, is amenable to a penalty, but the instrument is not invalid in our own courts. That the act, in this regard, was intended to apply only to the courts of the United States

was held in *Latham* v. *Smith*, 45 Ill. 25; *Craig* v. *Dimock et al.* 47 ib. 308; *U. S. Express Co.* v. *Haines*, 48 ib. 248.

The third point is, that plaintiff intermarried after suit was brought, and the title of the suit was not changed, but proceeded in her name as a *feme sole*. Appellant asks, after her marriage could a judgment be rendered in her favor by her original name? The answer to the question would undoubtedly be, it could, unless a change of name was brought to the notice of the court in some way, which does not appear to have been done in this case.

Another point made is, that the court ruled out the notices and affidavits presented by appellee in support of his tax deed. On this the case depends.

The constitution of the State, as well as the revenue laws, requires, before the purchaser at a tax sale shall receive a deed, he shall serve, or cause to be served, a written notice on every person in possession of the land or lot sold, three months before the expiration of the time of redemption, in which notice he shall state when he purchased, the description of the land or lot, and when the time of redemption will expire, and in like manner he shall serve on the person in whose name the land or lot is taxed, a similar written notice—if such person resides in the county where the land or lot is situate—and such purchaser is required, before he is entitled to a deed, to make an affidavit of having complied with the conditions of this section, stating the facts particularly relied on as such compliance, which affidavit must be delivered to the person authorized by law to execute the deed. Gross' Stat. 25, sec. 4.

These we deem conditions precedent to the right to have a deed. The premises in controversy were in the actual possession of one Reisig, as tenant of the owner, Dempsey, from whom appellee derived his title.

The notice, as appears by the record, is as follows:

"CHICAGO, June 1, 1859.
To ———

"Take notice, that on the 17th day of March, A. D. 1859, I purchased lot 3, subdivision of the north $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 20, township 39, range 14 east, in the county of Cook and State of Illinois, with buildings, if any situated thereon, at a sale of lots and lands (held in pursuance to law) for taxes and costs due the city of Chicago for general and special purposes for the municipal year, 1858, and that the time of redemption thereof will expire on the 17th day of March, 1859.

"Yrs, &c.,          F. R. WILSON."

H. F. Lewis, the agent of Wilson, made affidavit on the 12th of January, 1860, that he, as agent, served a notice, of which the above is a copy, on C. Reisig, whom he believed to be the occupant of the premises, and also that, on the first day of September, 1859, he served a similar notice on Charles McDowell, whom he believed to be the administrator of the estate of John Dempsey, to whom the estate was assessed.

This notice is liable to the grave objection that, if it truly stated the time when the redemption expired, which is required by the constitution to be stated in the notice, that time was the day the notice alleged the sale to have been made.

That the time of redemption was not truly stated, is apparent, for if the lot was sold on the 17th of March, 1859, the time of redemption would expire on the 17th of March, 1861. By the notice, the person on whom it was served would gain no valuable information. It is not such a notice as required by the constitution. The proof is, that Reisig cultivated this lot as a garden from 1858, paying rent to Dempsey up to his death in January, 1859, and afterwards to McDowell, the executor, for some time, and then to Joseph Dempsey up to the time he quit the possession in 1864. The notice served on McDowell, the executor, Lewis swears was similar to that served on Reisig, and, of course, void. Reisig swears that no

notice of any kind was ever served upon him, or any member of his family, in relation to these premises.

This is a case where the true owner of the premises, from all that appears in the record, was a resident of the county in which the tax sale was made, or if not an actual resident, had a tenant in possession of the premises. The notice, such as required by the constitution, should have been served upon him.

There is sufficient evidence in the record that the owner of the premises was a resident of the city of Chicago at the time of the sale for taxes, and so continued, and could have been found upon reasonable inquiry. A notice, then, should have been served upon him. A publication in the newspaper, to the deceased Dempsey, amounted to nothing, a living Dempsey being resident, on whom the notice could have been served as the owner. This provision of the constitution was intended for wise purposes—to prevent owners of land from being deprived of their titles, except upon actual notice, if practicable to give it, or by constructive notice in some newspaper if he be an absentee. The officer authorized to make this deed had no right to dispense with this requirement of the constitution, nor can the purchaser at the sale claim any rights, or obtain a deed, until he shall show, when challenged, that the notice, either actual or constructive, was given. Appellant was claiming a paramount title, and to make it out, he must show a strict compliance with all the requirements of the constitution and laws.

This he has failed to do.

It is further objected by appellant, that the defendant had no right to question the deed without first showing that he had paid all the taxes due and assessed upon the lot; that such is the requirement of the ordinances of the city, and of the revenue law of the State.

That provision of the general revenue law has long remained a dead letter upon the statute book, and is not considered of any validity, the effect of it being to compel a man to buy

justice. This no one can be compelled to do under our organic law. By that it is declared, that every person in this State ought to obtain right and justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws. Should justice be denied to him who has not wherewithal to pay for it? The conditions imposed by this act deprive a poor man of justice, and has no sanction in the constitution.

Appellant failing to make out title, the judgment against him was correct, and it must be affirmed.

*Judgment affirmed.*