JOHN F. DEVINE, Admr., Plaintiff in Error, *vs.* THE
    BRUNSWICK-BALKE-COLLENDER COMPANY, Defendant
    in Error.

*Opinion filed December 22, 1915.*

1. CONSTITUTIONAL LAW—*power to hear without power to determine is not judicial power.* The power to hear a cause without the power to adjudicate and determine the rights of the parties to the proceedings cannot be said to be judicial power as that term is used in the constitution, concerning the division of the powers of government.

2. SAME—*coroner and his jury do not exercise judicial power.* The powers and duties of the coroner and his jury as prescribed by section 14 of the Coroner's act are merely *quasi*-judicial in their nature, as the verdict is not conclusive as to the rights or liabilities of the parties affected, and such section is not invalid as delegating to the coroner and his jury judicial power belonging to the courts.

3. SAME—*section 14 of the Coroner's act does not deprive persons of property.* Section 14 of the Coroner's act is not invalid as permitting persons to be deprived of their property without due process of law, as the verdict of the coroner's jury is no more than a public document containing *prima facie* evidence of the facts properly before the jury for investigation.

4. EVIDENCE—*coroner's verdict admissible on question of negligence.* In an action for damages for the alleged negligent killing of a child by the defendant's automobile truck, the verdict of the coroner's jury, which finds the facts relative to the cause of the death and contains a statement that the driver was blameless for the occurrence and recommending his discharge from custody, is admissible in evidence as bearing upon the question of the negligence of the defendant, as the question of the driver's responsibility for the accident is a proper matter for investigation and finding by the coroner's jury.

5. INSTRUCTIONS—*when it is error to instruct the jury to consider the coroner's verdict.* While the coroner's verdict at the inquest over the body of a child killed by an automobile truck, which verdict finds the driver of the truck to be blameless, is admissible in evidence in an action for damages against the driver's employer, yet it is error to give an instruction calling the jury's attention to the verdict and stating that while it was not conclusive they should consider it in determining whether the driver of the truck was negligent.

6. SAME—*an instruction as to presumption that driver of truck was reasonably careful is erroneous.* It is error, in an action for damages for the alleged negligent killing of a child by an automobile truck, to give an instruction stating that in the absence of evidence to the contrary the law presumes that the driver of the truck was a reasonably careful and skillful driver of automobile trucks, and that the defendant is entitled to the benefit of such presumption if the jury believe, from all the evidence, that the plaintiff has failed to prove that the driver was not a reasonably careful and skillful driver.

7. SAME—*when instruction as to apparent necessity for slackening speed should not be given.* In an action for damages for the alleged negligent killing of a child by an automobile truck, an instruction should not be given which states that if the jury believe, from all the evidence, that as the driver of the truck, at the time and place in question, approached the place where the child was struck there was no apparent necessity for the driver stopping or slackening the speed of the truck in order to prevent injury to the child, then the law did not require the driver to stop or slacken the speed of the truck.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding.

EARL J. WALKER, for plaintiff in error.

FRANK M. COX, and R. J. FELLINGHAM, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is a writ of error by John F. Devine, administrator of the estate of Stanley O. Thompson, to review a judgment of the superior court of Cook county in favor of the defendant in error, the Brunswick-Balke-Collender Company, in an action on the case brought against it to recover damages for negligently causing the death of the plaintiff's intestate. It appears that the plaintiff's intestate, a child, in attempting to cross Milwaukee avenue, in the city of Chicago, was struck by an automobile truck driven by a servant of defendant in error and sustained injuries from which he died. A coroner's inquest was held, resulting in

a finding exonerating the driver of the truck from all responsibility.

On the trial of this case the verdict of the coroner's jury was introduced in evidence over the objection of plaintiff in error, and the jury were instructed, with respect to said evidence, as follows: "You are further instructed that the coroner's verdict in evidence is not conclusive, but you should consider the verdict of the coroner's jury in this case in considering whether or not defendant's truck driver is guilty of the negligence charged in the declaration or any count thereof." The admission of the coroner's verdict in evidence and the giving of this instruction are the principal errors relied upon for reversal.

It appears from the evidence that Milwaukee avenue runs in a northwesterly and southeasterly direction through the northwestern part of the city of Chicago. Two street car tracks are laid along this street, and at the time the accident occurred the street was torn up on account of certain repairs that were being made. The accident happened between four and five o'clock in the afternoon of October 25, 1911, and was witnessed by several persons. The evidence on the part of the plaintiff in error tends to show that Sebastian W. Foy, an employee of defendant in error, was driving the truck of defendant in error in a northwesterly direction along the east street car track, and that there was another wagon some three hundred feet ahead of the truck, going in the same direction; that plaintiff's intestate, a boy of the age of about six years, with three other boys,—two about his own age and one about five years his senior,— came down Milwaukee avenue and jumped on the rear of a wagon going southeast, on which they rode a short distance before they were ordered off by the driver, and that they then crossed to the east side of the street, where they remained from a minute to a minute and a half and then started to re-cross the street. At this time the wagon on which they had been riding was about one hundred and fifty

feet southeast of them and the automobile truck considerably farther away. Plaintiff's intestate was the last child to attempt to cross the street, and at the time he stepped upon the first rail of the car track the automobile truck was from fifty to one hundred feet distant, traveling at the rate of from twenty to twenty-five miles per hour, and was going at about that rate when plaintiff's intestate was struck by the left front wheel or bumper of the truck and knocked down and sustained the injuries from which he died. The evidence on the part of defendant in error tends to show that the automobile truck was proceeding at the rate of from four to six miles per hour at a distance of from fifteen to thirty feet behind the wagon which was ahead of it. Another wagon was proceeding in a southeasterly direction on the opposite track towards the city, and just as the horse's head was about even with the front of the automobile truck the boys suddenly came out from behind this wagon on the other track and attempted to cross in front of the automobile truck, resulting in the accident in question. As soon as the driver saw the first boy come from behind the wagon he applied his brakes, including the emergency brake, but was unable to bring his vehicle to a stop until after it struck the plaintiff's intestate, who was picked up about five feet west of the automobile truck, and the same did not travel more than from ten to forty feet from the time the first boy came into view until it was brought to a full stop.

The finding of the coroner's jury introduced in evidence was as follows: "An inquisition was taken for the People of the State of Illinois at 2859 North Spaulding avenue, in the city of Chicago, in said county of Cook, on the 26th day of October, A. D. 1911, before me, Peter Hoffman, coroner in and for said county, upon view of the body of Stanley O. Thompson, Jr., then and there lying dead, upon the oaths of six good and lawful men of said county, who being duly sworn to inquire on the part of the People of the

State of Illinois into all the circumstances attending the death of said Stanley O. Thompson and by whom the same was produced, and in what manner and when and where the said Stanley O. Thompson came to his death, do say upon their oaths, as aforesaid, that the said Stanley O. Thompson, now lying dead at 2859 North Spaulding avenue, in said city of Chicago, county of Cook and State of Illinois, came to his death on the 25th day of October, A. D. 1911, in the office of Dr. Hannig, 2812 Milwaukee avenue, from injuries received by being struck and thrown to the ground by an auto-supply car owned by the Brunswick-Balke-Collender Company and driven by one Sebastian W. Foy on Milwaukee avenue between Sawyer avenue and Diversey street at about 4:45 P. M., October 25, 1911. From the testimony presented, we, the jury, believe the aforesaid Sebastian W. Foy was blameless for this unfortunate occurrence, and we therefore recommend his discharge from further custody."

Plaintiff in error objected to the introduction of the verdict of the coroner's jury in evidence, and urged in support of his objection that the Coroner's act, and particularly section 14 of that act, is unconstitutional and void. The objection was overruled. He thereupon made a motion to strike out the last paragraph of the verdict, which motion was also overruled, and it was introduced in evidence, as above stated, and taken by the jury to the jury room. By appropriate assignment of error the constitutionality of this section of the statute is raised in this court, and it is by reason of such assignment of error that the writ of error has been prosecuted direct to this court.

Section 14 of the Coroner's act is as follows: "It shall be the duty of the jurors, as sworn aforesaid, to inquire how, in what manner, and by whom or what, the said dead body came to its death, and of all other facts of and concerning the same, together with all material circumstances in anywise related to or connected with the said death, and

make up and sign a verdict, and deliver the same to the coroner." (Hurd's Stat. 1913, p. 560.)

The particular objections urged to the constitutionality of this section are, first, that it invests the coroner's jury with judicial power, in violation of section 2 of article 6 of the constitution of this State, by which all judicial powers are vested in the courts; and second, that it deprives a person of his property without due process of law, in violation of the provisions of article 2 of the constitution of this State and of sections 4 and 14 of the amendments of the constitution of the United States, in that it permits one to be deprived of his property by a proceeding of which he has no notice and in which he is not allowed to participate and examine and cross-examine the witnesses produced at such hearing. In our judgment neither of these positions is well taken. No definition of the term "judicial power," as the term is used in the constitution, is given by that instrument. On the contrary, it is there used to designate one of the three great branches or departments into which the powers of government are divided and by which its affairs are to be administered, viz.: The legislative department, which makes, alters and repeals the laws; the judicial department, which interprets, construes and applies the laws; (Cooley's Const. Lim.—6th ed.—108;) and the executive department, which executes and compels obedience to the laws. (*Witter* v. *Cook County Comrs.* 256 Ill. 616.) Generally speaking, there is no great difficulty in distinguishing between the different departments and the duties and functions of each, but in the practical application of those various functions to the affairs of State it is often difficult to determine to which of these three departments the duties and functions of many officers properly belong. This arises from the fact that in the practical administration of State affairs there is often such a blending and admixture of the different powers of government that instances will occur in which officers are charged with func-

tions and duties which partake of the nature of all three of these departments. As said in *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, on page 231: "Administrative and executive officers are frequently called upon, in the performance of their duties, to exercise judgment and discretion, to investigate, deliberate and decide, and yet it has been held that they do not exercise judicial power, within the meaning of the constitutional provision. (*Owners of Lands* v. *People,* 113 Ill. 296; *People* v. *Bartels,* 138 id. 322; *People* v. *Simon,* 176 id. 165.) The power exercised is ministerial or executive, but as an incident to it the official is called upon to perform acts which are in their nature judicial,—very nearly akin to those exercised by the courts. Such powers, when conferred upon other officials than judges, are often termed *quasi*-judicial or discretionary. They are said to 'lie midway between the judicial and ministerial ones. The lines separating them from such as are thus on their two sides are necessarily indistinct, but in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs but after a discretion in its nature judicial, the function is termed *quasi*-judicial.'—Bishop on Non-Contract Laws, secs. 785, 786; Mechem on Public Officers and Agents, sec. 637." Judge Cooley, in his work on Constitutional Limitations, (6th ed. p. 109,) defines judicial power as follows: "The power which adjudicates upon and protects the rights and interests of individual citizens and to that end construes and applies the laws." This general definition of the judicial power has been adopted and approved by this court in the following among other cases: *Owners of Lands* v. *People, supra; People* v. *Chase,* 165 Ill. 527; *People* v. *Simon, supra; State* v. *Illinois Central Railroad Co. supra.* The power involves not only the power to hear and determine a cause, but also the power and jurisdiction to adjudicate and determine the rights of the par-

ties to the controversy and to render a judgment or decree which will be effectual and binding upon them in respect to their personal or property rights in controversy in such proceedings. (*O'Brien* v. *People,* 216 Ill. 354.) The power to hear without the power also to adjudicate and determine the rights of the parties to such proceedings cannot be said to be the exercise of the judicial power as that term is used in the constitution of this State. The duties and functions of a coroner and the coroner's jury are of this character. While the duties and functions of such jury are of a judicial nature to the extent that they are authorized to inquire into and investigate how, by whom and in what manner the deceased came to his death and of all the facts and circumstances connected with or in any manner related to or connected with such person's death, and may subpoena and examine witnesses under oath for that purpose, they have no power, on such hearing, to adjudicate and determine the rights and liabilities of the parties growing out of the matter under investigation by them, and their finding has none of the attributes of a judgment or decree. No rights or liabilities, either civil or criminal, are established or fixed by it. A person exonerated from all liability by the coroner's jury is still subject to be indicted by the grand jury for causing the death of the person of which he was exonerated by the coroner's jury, and he may be tried and convicted of such act as a criminal offense notwithstanding the verdict of the coroner's jury exonerating him; and the same is true with respect to the civil liability growing out of such occurrence. Their powers, then, are not judicial, but, at most, are only *quasi*-judicial in their nature, and the statute in question is therefore not invalid as a delegation of the judicial power of the State.

For the same reason the act is not void as depriving a person of his property without due process of law, as no rights, property or otherwise, are fixed or established by the verdict rendered in such a proceeding. At most the

finding of a coroner's jury is but a public document containing *prima facie* evidence of the facts properly before the jury for investigation,—that is, as to the person and the manner in which such person came to his death,—and as such, as held in *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557, their finding is admissible in evidence. In the *Vocke case,* on pages 566 and 567, it is said: "We are satisfied, both upon principle and authority, that the coroner's inquisition was admissible in evidence. The inquisition was made by a public officer, acting under the sanction of an official oath, in the discharge of a public duty enjoined upon him by the law, and when it is returned into court and is filed, we see no reason why it should not be competent evidence tending to prove any matter properly before the coroner which appears upon the face of the inquisition. We do not hold that such evidence is conclusive, but only that it is competent evidence to be considered." This holding has since been approved in the following among other cases: *Grand Lodge I. O. M. A.* v. *Wieting,* 168 Ill. 408; *Stollery* v. *Cicero and Proviso Street Railway Co.* 243 id. 290; *Foster* v. *Shepherd,* 258 id. 164. The admissibility in evidence of the finding of a coroner's jury is now too well established by the authorities to be longer considered an open question in this State. The question as to whether or not Foy was blameless of the accident was an essential matter before the coroner's jury for their investigation and a proper matter to be included in their verdict and as such to go to the jury. For the reasons given we think the court did not err in admitting the coroner's verdict in evidence.

As to the instruction calling the the attention of the jury to the verdict of the coroner's jury and directing them to consider it in determining the question of defendant's negligence, we are of opinion it should not have been given. The verdict of the coroner's jury, like any other public document, was competent evidence tending to prove any matter of fact properly appearing on the face of the inqui-

sition, but its weight as evidence, like any other document or other evidence in the case, was for the jury, in connection with all of the other facts and circumstances proven on the trial. (*Hartshorn* v. *Byrne,* 147 Ill. 418.) The court had no right to invade the province of the jury and tell them, or attempt to tell them, what weight should be attached to such finding of the coroner's jury. The instruction is also objectionable in directing the jury's particular attention to the verdict of the coroner's jury, and telling them that they should consider it in determining whether or not defendant was guilty of the negligence charged in the declaration or some count thereof. It was no more the duty of the jury to consider the evidence on that question than it was their duty to consider all of the other competent evidence in the record bearing upon that question. In *Rumbold* v. *Royal League,* 206 Ill. 513, we held it was error to give an instruction which told the jury that the coroner was a public officer acting under the sanction of an official oath in the discharge of his duties; and that the inquisition was competent evidence tending to prove the cause of death which appears upon the face of the inquisition, and that they should consider the finding of the coroner's jury, together with all the other facts and circumstances in the case, in determining whether or not the deceased committed suicide, but that "the finding of the coroner's jury or inquest is, however, not conclusive upon you in determining the cause of death," and we there said, on page 518: "All that was admitted in evidence was the verdict of the coroner's jury, and while it would have been proper to have told the jury, by an instruction, that the verdict of the coroner's jury could be considered by them in determining the nature and cause of death, it should have stated that in very simple language, and have coupled with it the statement, not that it was not conclusive, as is the conclusion of the instruction here, but that it was simply evidence that might be considered with other evidence. As we interpret the in-

270 — 33

struction, it in effect tells the jury that while the verdict is not conclusive, it comes under the sanction of the official oath of an officer in the discharge of his duty and is of a very high class of evidence. We think the court had as well said to the jury that while the law does not make the verdict of the coroner's jury conclusive upon the question before them, the court regards it as very strong evidence of the matters contained in it. The vice of the instruction is not relieved by telling the jury that they should consider it in connection with the other evidence, facts and circumstances in the case." What is there said with respect to the use of the word "conclusive" in the instruction is equally applicable to the instruction given in the case at bar. It was error to give this instruction.

Complaint is made of the giving of other instructions, all of which have been considered. Two of them are of such a character as to demand consideration at this time.

By the sixth instruction the jury were told that if they believed, from the evidence, that the driver of the defendant's truck was a person of ordinary and reasonable skill in the business in which he was engaged, and that he exercised the ordinary judgment and skill of a reasonably careful and prudent driver in driving the truck at and just before the time of the injury complained of, then they should find the defendant not guilty. This instruction, standing alone, was proper.

The seventh instruction was as follows:

"The law presumes, in the absence of any evidence to the contrary, that the driver of the truck in question was a reasonably careful and skillful driver of auto trucks; and in this case, if you believe, from all the evidence, plaintiff has failed to prove that the driver of the truck in question was not a reasonably careful and skillful driver of automobile trucks, then the defendant is entitled to the presumption that the said driver was reasonably careful and skillful in such work."

The last instruction should not have been given. There is no presumption, one way or the other, as to the skill or want of skill of the driver of a vehicle, whether horse-drawn or propelled by mechanical power, when all of the facts and circumstances out of which the charge of negligence arose are before the jury. When negligence is charged and there is evidence in support of such charge, the fact that the driver of the vehicle was a reasonably careful and skillful driver and that he exercised that degree of care and skill which an ordinarily careful and skillful driver would have exercised under the circumstances was a matter of proof by the defendant. The instruction should not have been given.

The court also gave at the instance of defendant in error the following instruction, numbered 17:

"If you believe, from all the evidence in this case, that as the driver of the defendant's truck at the time and place in question approached the place where the deceased was injured there was no apparent necessity appearing for the driver of said truck stopping or slacking the speed of the truck in order to prevent injury to the deceased, then the law did not require the driver of the truck to stop or slacken the speed of the truck."

This instruction was clearly erroneous. It is not a question as to whether or not, in approaching the place in question, there was no "apparent necessity appearing for the driver of said truck stopping or slacking the speed of the truck in order to prevent injury to the deceased," but whether or not the driver was operating the car with that degree of care and skill which an ordinarily prudent and skillful driver would have exercised under the circumstances, having due regard to the location, circumstances and surroundings in which the driver was operating his car at the time. The evidence on the question of negligence was close and conflicting, and in this condition of the rec-

ord it was essential that the jury should have been clearly and accurately instructed as to the law of the case.

For the errors indicated in giving the instructions complained of, the judgment of the superior court must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*