(No. 33015.—

THE PEOPLE *ex rel.* Borghild Christiansen, Appellant, *vs.* FRANCIS X. CONNELL, Clerk of the Circuit Court of Cook County, Appellee.

*Opinion filed March 17, 1954.*

BENJAMIN B. DAVIS, WILLIAM C. BOYDEN, and ROTHS-CHILD, STEVENS & BARRY, all of Chicago, (JOHN PAUL STEVENS, JOSEPH W. BAER, and JOHN S. JONES, of counsel,) for appellant.

JOHN GUTKNECHT, State's Attorney, of Chicago, (GORDON B. NASH, and JORDAN JAY HILLMAN, of counsel,) for appellee.

LATHAM CASTLE, Attorney General, of Springfield, (GRENVILLE BEARDSLEY, JOHN L. DAVIDSON, and WILLIAM C. WINES, of counsel,) for *amicus curiae*.

WERNER W. SCHROEDER, *pro se,* and ALBERT E. JENNER, JR., *pro se,* both of Chicago, (WESLEY G. HALL, of counsel,) *amici curiae*.

Per· CURIAM: The People of the State on the relation of Borghild Christiansen, a citizen and resident of Cook County, filed a petition for *mandamus* in the circuit court of that county seeking to compel the respondent, Francis X. Connell, clerk of the circuit court of Cook County, to do every act necessary to accept and file a certain complaint for divorce which had been tendered for filing by the petitioner, together with the requisite filing fee, but refused on the ground that petitioner had failed to comply with the requirements of "An Act in relation to actions for divorce, separate maintenance and annulment of marriage," enacted by the Sixty-eighth General Assembly as Senate Bill 407 and approved June 12, 1953. Laws of 1953, p. 284; Ill. Rev. Stat. 1953, chap. 40, pars. 23 through 29; Jones Ann. Stat. 109.188(1) through 109.188(7).

The petition for writ of *mandamus* had attached thereto as exhibits the tendered complaint for divorce, a copy of

a letter written by one of the judges of the circuit court of Cook County addressed to the judges of Illinois and the clerks of the courts with whom suits for divorce, separate maintenance and annulment are filed, and the full text of Senate Bill 407 and the full text of Senate Bill 646, the latter being "An Act authorizing counties and cities to employ qualified administrative aids to the court in said counties and cities in the administration of divorce, separate maintenance and annulment of marriage proceedings," enacted by the Sixty-eighth General Assembly and approved July 10, 1953. (Laws of 1953, p. 1011; Ill. Rev. Stat. 1953, chap. 40, pars. 7a through 7c.) The petition challenges the constitutionality of Senate Bill 407 and Senate Bill 408 of the Sixty-eighth General Assembly, the latter being "An Act to amend Section 6 of 'An Act to revise the law in relation to divorce,' approved March 10, 1874, as amended." (Laws of 1953, p. 243; Ill. Rev. Stat. 1953, chap. 40, par. 7.) Various grounds of unconstitutionality under the constitutions both of the State of Illinois and of the United States are alleged. Though a copy of Senate Bill 646 was attached, the petition did not allege its unconstitutionality. Respondent filed an answer which by stipulation of the parties is to be taken as a motion to dismiss. The answer admitted refusal to accept the complaint and denied the various grounds of unconstitutionality alleged. The trial court entered its order dismissing the petition and the appeal is brought directly to this court, the validity of a statute being involved. This court has been favored by extensive briefs and arguments of *amici curiae* filed by leave of court, as well as by the briefs and arguments of the parties to this appeal, in considering the questions presented.

Section 1 of Senate Bill 407 provides that, subject to the exceptions thereinafter provided, any person desiring to commence an action for divorce, separate maintenance or annulment of marriage, shall not less than sixty days

nor more than one year before filing a complaint, file with the clerk of the court in which the action is intended to be commenced, a written statement reciting his intention to file the complaint. Section 2 provides that the court may, by order, waive compliance with all or any part of the provisions of section 1 on written motion supported by one or more affidavits setting forth facts which satisfy the court that immediate action is required to protect the interests of any person who could be affected by a decree in the proceedings; that where such compliance is waived the final order or decree shall recite the facts constituting the grounds of such waiver. Section 3 requires every complaint for divorce, separate maintenance or annulment to recite, in the initial paragraph thereof, the date upon which and the court in which the declaration of intention was filed and the file number assigned by the clerk to the statement of intention, but excepts those cases in which leave to file has been granted under section 2. Section 4 sets out the requirements of the statement of intention, including the names and addresses of all prospective parties, the date and place of marriage, whether or not the husband and wife are living together, and the names, sex, age, whereabouts and custody of any child or children born of the marriage or adopted. It is provided that promptly following the filing of the statement of intention, the clerk shall cause the same to be delivered to the judge for his inspection of the contents. Section 5 provides that the judge may, after inspection of the statement of intention, invite the prospective parties and their counsel, if any, to confer with him in his chambers; that no testimony shall be taken at the conference or any record made of the statements of any party; that attendance shall be voluntary and that nothing therein is an authorization to compel the attendance of a party by process or order of court. Section 6 allows the clerk to charge a filing fee of not to exceed $1 for the filing of the statement of intention, and sec-

tion 7 empowers the court to adopt such rules as it may deem necessary or expedient to carry out the provisions of the act.

Senate Bill 646, by way of implementing certain portions of Senate Bill 407, provides in section 1 that the legislative authorities in counties and cities may provide for the employment of qualified administrative aids to assist the courts within the territorial limits of such counties and cities in the administration of divorce, separate maintenance and annulment of marriage proceedings, such aids to be appointed by the legislative authority subject to the approval of a majority of the judges in each court involved, to serve such terms and receive such compensation as provided by ordinance. Section 2 allows the court, at any time after a statement of intention to file a complaint for divorce, separate maintenance or annulment has been filed, to engage such administrative aids to assist him, with the view of safeguarding the family's best interests, the aids to perform such duties as the court may direct. Compliance with the section by the parties to any proceedings is to be voluntary only. Section 3 empowers the legislative bodies to make the necessary appropriations to carry out the purposes of the act. Senate Bill 408 amends section 6 of the Divorce Act so that the same shall read: "The process, practice and proceedings under this Act shall be the same as in other civil cases, except as otherwise provided by law or rule of court."

By way of defining the issues and delineating the scope of this inquiry, it should be said that the constitutionality of Senate Bill 646 is not directly involved in this appeal. Though a copy of the bill was attached as an exhibit, its constitutionality was neither mentioned nor challenged in appellant's petition. Its validity was not passed upon by the trial court. It cannot be questioned for the first time here. (*People* v. *Hagopian,* 408 Ill. 618; *People* v. *Brickey,* 396 Ill. 140.) Senate Bill 646 is an act complete in itself.

While it may be said that Senate Bills 407 and 646 are *in pari materia* and, therefore, are to be construed together, (*People ex rel. Tilley* v. *New York, Chicago and St. Louis Railroad Co.* 364 Ill. 456,) and while, if Senate Bill 407 is unconstitutional, Senate Bill 646 will become inoperative, the validity of Senate Bill 407 does not depend upon nor is it affected by Senate Bill 646. Senate Bill 407 is also complete in itself. It is an operative statute independent of the companion legislation. Therefore, though counsel have at some length dwelt upon the provisions of Senate Bill 646, we do not believe that an analysis or examination of its provisions are necessary or proper on this appeal.

The petition challenged the validity of Senate Bill 408 upon the same grounds urged against Senate Bill 407 and the trial court expressly held that the former statute as well as the latter was constitutional. However, the arguments presented in this court have not attacked Senate Bill 408 except by inference and upon the theory, apparently, that it is somehow related to or connected with the other statute. This assumption appears to be contrary to the provisions of the act itself and to the history of legislation concerning section 6 of the Divorce Act which preceded its enactment. Senate Bill 408 amends section 6 by deleting the paragraph added by the General Assembly in 1949 referring to the act of 1949 relating to divorce divisions (Ill. Rev. Stat. 1949, chap. 37, pars. 105.19 *et seq.*,) which was held unconstitutional by this court in *People ex rel. Bernat* v. *Bicek,* 405 Ill. 510. As amended by Senate Bill 408, the provisions of section 6 are, for all practical purposes, the same as they were in 1935 when amended by the legislature to conform to the provisions of the Civil Practice Act. The 1935 act was one of many pieces of legislation enacted by the Fiftieth General Assembly, either conforming the practice and procedure of various special statutory proceedings to the Civil Practice Act or bringing them under

that act. (Ill. Rev. Stat. 1935, chap. 40, par. 7.) As amended in 1935, section 6 of the Divorce Act reads: "The process, practice and proceedings under this Act shall be the same as in other civil cases, except as herein otherwise provided." Thus, the net effect of Senate Bill 408 is to restore section 6 as it existed prior to the 1949 amendment. Senate Bill 408 does not, by its express terms or by any reasonable inference, refer to Senate Bill 407, nor does Senate Bill 407 refer to Senate Bill 408. There appears to be no connection between the bills, and we, therefore, find that, regardless of the objections urged against Senate Bill 407 which will be discussed hereafter, Senate Bill 408 is not open to constitutional attack on those grounds. We confine this opinion, therefore, to a consideration of Senate Bill 407 and the constitutional objections urged against that act.

Appellant argues that the statute obstructs litigants' right of access to the courts without delay, in violation of section 19 of article II of the constitution of the State of Illinois which declares: "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay." Counsel for appellant state that the objection is not to the length of the delay as such but rather to the fact that the delay is interposed before jurisdiction is obtained and, therefore, a litigant's right to seek immediate redress in the courts is violated. It is said that the enforced waiting period imposed by section 1 not only causes a useless and arbitrary delay, but that delay, by abridging the right to file suit and have summons issued promptly, necessarily destroys the remedies which depend on obtaining personal service of summons on a defendant. By way of reply it is suggested that there is no natural right of access to the courts to obtain a

divorce, separate maintenance or an annulment, but that resort to the courts for such purposes is a privilege existing solely by grant of the legislature, which may deny or withdraw the privilege altogether, or condition, limit or restrict it as it sees fit; that divorce, separate maintenance and annulment, and relief ancillary thereto are not remedies for "injuries and wrongs" to person, property or reputation, within the meaning of section 19 of article II, since that section applies only to natural rights existing independently of statute; that assuming that the rights are natural rights protected by section 19 of article II, the legislature may impose procedural or other conditions upon the exercise of the rights which do not serve in practical effect to deny the right; that the procedural conditions imposed are reasonable and that the act should be sustained as a proper exercise of the police power of the legislature.

We cannot agree with the idea advanced by appellee that the actions affected by the statute in question are not within the purview of section 19 of article II because the right to institute them exists only by statutory privilege or because they are not remedies for injuries and wrongs to person, property or reputation within the meaning of those terms as used in the constitution. No cases have been cited by counsel for appellee which directly support their proposition. The entire argument is based upon the thought and reasoning that since the right to bring the action exists solely by virtue of legislative sanction, the legislature may, if it chooses, revoke the right entirely, and, therefore, may limit it or condition it at will without regard to the inhibitions of constitutional mandate found in section 19 of article II.

It can be readily conceded that the right to divorce did not exist at common law. In England, from the twelfth century until the passage of the Matrimonial Causes Act of 1857 (20 and 21 Vict. c. 85,) the subjects of divorce and annulment were vested exclusively in the ecclesiastical

courts. In the American colonies and for a considerable period in the various States of the United States, divorces were exclusively a matter of legislative declaration by special act. Gradually, because of the realization that to determine the propriety of dissolving the marriage relation might involve investigations of a judicial nature, (see *Maynard* v. *Hill,* 125 U.S. 205,) the legislatures of the several States have at the present time entrusted the courts with jurisdiction over divorce proceedings. Indeed, section 22 of article IV of the constitution of Illinois prohibits special legislation in the field of divorce. But the paramount authority of the legislature in the field of divorce has never been questioned by this court. It has frequently been recognized. Thus, in *Embree* v. *Embree,* 53 Ill. 394, at 395: "The question of what shall constitute grounds for granting a divorce, or whether the marriage contract shall be dissolved under any circumstances, or for any cause, is one of public policy, and belongs to the legislative, and not to the judicial, department of our government." And in *McFarlin* v. *McFarlin,* 384 Ill. 428, 430: "Courts of equity have no inherent power in cases of divorce. The jurisdiction of such courts to hear and determine divorce matters is conferred only by statute. While such courts may exercise their powers within the limits of the jurisdiction conferred by the statute, the jurisdiction depends upon the grant of the statute and not upon general equity powers. *Johnson* v. *Johnson,* 381 Ill. 362, *Smith* v. *Smith,* 334 Ill. 370." See, also, *Clubb* v. *Clubb,* 402 Ill. 390, 400; *Arndt* v. *Arndt,* 399 Ill. 490, 495.

What has been said of divorce applies also to actions for separate maintenance. (*Harding* v. *Harding,* 144 Ill. 588, 597; Ill. Rev. Stat. 1953, chap. 68, par. 22.) While in Illinois we have no act of the legislature expressly authorizing the courts to grant annulments and while the courts of equity of this State have gradually assumed jurisdiction to grant annulments in the absence of such a statute,

the practice extending over a great number of years, we doubt not, in view of the considerations of public policy involved, that the legislature has a large measure of power which it may exercise in the regulation of such proceedings, and for the purpose of this decision it may be conceded without deciding that the origin of authority to annul is legislative in its nature. Such a view accords with the history of the development of the annulment action in England, and the existence of special statutes regulating annulment in many of the States.

It by no means follows, however, that because the origin of the right or privilege is legislative there are no constitutional restrictions on the type of legislation which may be enacted regulating the exercise of the right. Once the matter has been committed to the judiciary, the parties to such judicial proceedings are clearly entitled to the same constitutional safeguards as are parties to other judicial proceedings. The fact that the legislature might entirely abolish the right of access to the courts for purposes of divorce and annulment does not imply the power to make the exercise of those rights conditional upon a surrender of constitutional guarantees. Thus, for example, were the legislature to pass a law conditioning the right to petition for a divorce upon the payment of a fee of $1000, such a law would, we believe, clearly contravene the very section of our constitution now being considered as amounting to a compulsory purchase of justice. (See *Wilson* v. *McKenna,* 52 Ill. 43.) The Supreme Court of the United States has frequently announced the rule that a State may not attach unconstitutional conditions to the exercise of a right even though the right itself exists entirely at the pleasure of the State. (*Power Mfg. Co.* v. *Saunders,* 274 U.S. 490; *Hanover Fire Ins. Co.* v. *Carr,* 272 U.S. 494; *Frost & Frost Trucking Co.* v. *Railroad Commission,* 271 U.S. 583; *Terral* v. *Burke Construction Co.* 257 U.S. 529.) This principle, applied by the above decisions to situations in

which a State accords certain privileges to a citizen of a sister State, can with as much logic or reason be applied to a situation in which a State seeks to impose unconstitutional conditions upon the exercise of a right conferred upon its own citizens. In either case the State concededly may withdraw the right entirely, yet the right, once given, must be regulated by legislation consistent with constitutional safeguards. Thus, in *Townsend* v. *Townsend,* Peck 1 (Tenn. 1821) the Supreme Court of Errors and Appeals of Tennessee held unconstitutional a statute which provided that no execution should issue upon a judgment for two years after its rendition unless the plaintiff agreed to receive his satisfaction in the form of notes on certain State banks. It was held that even assuming that the right to execution was a creature of the legislature, nevertheless an unconstitutional condition could not be imposed upon its exercise.

In *Daugherty* v. *American McKenna Process Co.* 255 Ill. 369, this court held that there is no constitutional right under the constitution of this State to recover damages for death caused by wrongful act in another State, but plainly inferred that section 19 of article II of our constitution was applicable to an action for wrongful death (a statutory right) where the act occurs in this State. It was said, (at p. 373): "The contention of counsel that this provision of the Injuries Act violates section 19 of the bill of rights of our State constitution,—that every person ought to find a remedy in the law for all injuries and wrongs which he may receive in his person, property or reputation,—is without force. That provision of the bill of rights applies only to injuries sustained in this State." It is our conclusion that the objection urged cannot be disposed of merely by stating that the rights are by legislative grant and, therefore, not protected by the constitution. Nor are we disposed to hold that the actions affected are not remedies for injuries and wrongs to person, property or repu-

tation within the meaning of section 19 of article II on the premise that the words used refer only to natural rights existing independently of statute. A person having a cause of action for divorce has been as surely wronged and injured in his person as one having a cause of action for injuries sustained through the negligent operation of an automobile.

It is suggested, for the appellee however, that even though actions for divorce, separate maintenance and annulment are within the purview of section 19 of article II of our constitution, the legislature, in the exercise of the police power, may impose reasonable conditions upon the privilege of access to the courts. In considering this proposition, it is necessary to observe that two distinct kinds of protection are afforded to the litigant by section 19: (1.) a certain remedy for all injuries and wrongs, and (2) the right "to obtain, by law, right and justice freely, * * * completely and without denial, promptly, and without delay." We also find that the decisions cited in support of the validity of the statute here in question deal with the power of the legislature to impose reasonable restrictions upon the remedy for injuries and wrongs rather than with the right of access to the courts freely and without delay. Illustrative of this class of cases is *Clarke* v. *Storchak,* 384 Ill. 564, sustaining the validity of the so-called "guest statute" with respect to motor vehicles. Such decisions are not germane to the question here at issue, since the right of free and prompt access to the courts is not involved. More pertinent is the decision of the Supreme Court of Ohio in *State ex rel. Christian* v. *Barry,* 123 Ohio 458, where the relator challenged the validity of a rule of the police department requiring police officers to obtain the permission of the chief of police before filing suits for damages. This rule was held to be violative of that section of the Ohio constitution which corresponds to section 19 of article II of the constitution of Illinois.

It is also urged in support of the validity of the statute that the same is in keeping with the current trend of public policy with respect to discouraging divorce; and reference is made to statutory provisions adopted in other States which, it is said, are comparable to the statute here involved. An examination of these statutes, however, discloses that none of them presents the constitutional question which arises in the case at bar. Generally speaking, these statutes in other States fall into two general classes, (1) statutes which provide that suit for divorce shall not be filed before the lapse of a given time after the commission of certain acts which are made the basis of an action for divorce, and (2) statutes which require the lapse of a given period of time after the filing of suit or service of process before a final decree for divorce may be entered. Such legislation applies uniformly to all litigants and does not involve any delay of access to the courts. Under statutes of the first class, the right to file an action for divorce does not arise until the lapse of the required period of time after commission of the acts complained of. Under statutes of the second class, there are no restrictions upon the institution of suit, nor upon the right to make immediate application for interlocutory relief. No discretion is conferred upon the court to expedite the case of one litigant over that of others. It should be manifest that legislation of this character does not impinge upon the right of access to the courts freely and without delay.

Lengthy discussion has been devoted in the briefs to the question whether the requirement of the filing of an affidavit of intention not less than sixty days before the filing of a complaint would be seriously prejudicial to the rights of the litigant. It has been earnestly contended against the validity of the statute that serious, and possibly irreparable, injury may be incurred because the prospective defendant may place himself beyond the reach of process or may dispose of his property during the sixty-day period.

It is just as earnestly contended to the contrary that other remedies are available to the prospective plaintiff for protection against such contingencies. A determination of the relative merits of these opposing contentions is unnecessary to the determination of the question before the court. If section 19 of article II of the constitution affords the litigant seeking a divorce an unqualified right of immediate access to the courts, the legislature has no power to deprive him of that right merely because some other process may be available for the protection of rights which are incidental to the right to maintain a divorce proceeding. The existence of such collateral remedies cannot be made a substitute for the constitutional right to obtain justice freely and without delay.

Much emphasis has been placed upon the profound interest of the State in the marriage relation as a justification for the imposition of special restrictions upon the filing of suits with respect thereto. This court, in previous decisions, has recognized the laudable purposes which are sought to be achieved by legislation in this field, but nevertheless has been constrained to hold such legislation invalid when it impinges upon the constitutional guarantees. This court cannot concern itself with the wisdom of the legislation in question, in determining whether or not it comes within the limitations which the constitution imposes.

It is suggested for the appellee that this statute may be sustained as merely creating a procedural step which it is reasonable to require as an incident to the administration of justice. The language of the act does not support this contention. Its clearly intended purpose is to afford an opportunity to explore the possibility of a reconciliation. In any event, this law could be sustained as a rule of procedure only if the procedure sought to be established applied uniformly to all cases. The legislature has no more power to discourage the filing of divorce cases by post-

poning the right of access to the courts than it would have to discourage actions for personal injury by similar measures. To hold otherwise would be a denial of that equal protection of the law to which every person is entitled.

There is even less to be said in support of the requirement of a mandatory waiting period before the filing of a complaint for separate maintenance or the annulment of a marriage. It is difficult to see how any public policy could be served by deferring the filing of a complaint for the annulment of a marriage which is absolutely void, or the institution of a suit for maintenance and support by a wife who is living separate and apart from her husband without fault on her part.

In holding the act known as the "Heart Balm" Act to be violative of the constitution, this court said in *Heck* v. *Schupp*, 394 Ill. 296, at page 300: "The contract of marriage has always been known in the law as a contract involving civil rights just as other contracts involve such rights, and no reason appears why, under section 19 of article II of our constitution, such rights should not have their day in court." While the statute condemned in that decision was designed to completely destroy the right to relief, (a deprivation of remedy), there is no logical reason why rights with respect to the contract of the marriage should not have equal protection under the second provision of section 19, which guarantees the right of access to the courts freely and without delay.

Finally, it is contended that the constitutional requirement of the free access to the courts is satisfied by the provision of the statute that the court may, upon a showing that immediate action is required, waive compliance with the provisions of the act. It is a sufficient answer to say that the constitution does not provide that every person ought to obtain right and justice freely and without delay only in cases where the court shall find that immediate action is required to protect his interests. In any event,

it is not the function of the court to fix standards by which to determine the urgency of the case of the individual litigant. In the absence of any legislative guides, there could be no uniformity in the administration of justice under this law.

There is another constitutional objection which, in our opinion, is also fatal to the validity of the statute before us. There are many areas of conflict and of litigation in which the participation of a judge as mediator or conciliator might be desirable. The volume of personal injury litigation might be reduced, for example, or labor disputes averted, by preliminary mediation before a judge. It is arguable that the State should be able to make full use of its judiciary, wherever their services might be valuable. But that result cannot be reached unless our constitutional doctrine of separation of powers is first altered. Of course, as has been ably argued, the constitution does not require a rigid separation of powers, and a degree of flexibility is necessary if government is to function. But an understanding view of the purpose of our doctrine of separation of powers is not enough to justify the present provision. The function here required of a judge is too remote from normal judicial duties to be sustained.

Here, if the judge does not altogether ignore the statutory provision, he "may, * * * invite the prospective parties and their counsel, if any, to confer with him in his chambers. No testimony shall be taken at the conference or any record made of the statements of any party. Attendance shall be voluntary and nothing herein is an authorization to compel the attendance of a party by process or order of court." (Ill. Rev. Stat. 1953, chap. 40, par. 27.) The gap between the contemplated conference and a judicial hearing is broad. In the first place, there is nothing pending before the court to be decided. Decision is the heart of the judicial function. Without it, there can be no adjudication. "The power to hear without the power

also to adjudicate and determine the rights of the parties to such proceedings cannot be said to be the exercise of the judicial power as that term is used in the constitution of this State." (*Devine* v. *Brunswick-Balke-Collender Co.* 270 Ill. 504, 511.) Moreover, no one, whether party or witness, can be required by judicial process to attend the conference. No record is to be made of what occurs at the conference and the conference may be *ex parte*. The pretrial conference, (Ill. Rev. Stat. 1953, chap. 110, par. 182a,) relied upon by way of analogy, occurs in the course of a pending lawsuit. The judge commands attendance, he does not invite. A record of the pretrial conference may be preserved. In our opinion, the function to be performed by the judge at the conference contemplated by the present statute cannot fairly be described as judicial.

The discussion of other questions which have been presented appears to be unnecessary to this opinion. It is our conclusion that the divorce statute here challenged violates our constitution in the respects above noted, and must be held invalid for that reason. It follows that the trial court erred in dismissing appellant's petition and in denying the relief sought. Accordingly, the judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE SCHAEFER, specially concurring:

I agree with the judgment of the court in so far as it is based upon the non-judicial character of the function to be performed by the judge at the conference contemplated by the statute. But I do not agree that the generalized exhortation of section 19 of article II of the constitution that "Every person ought to * * * obtain * * * right and justice * * * without delay" invalidates the statute before us. Requirements not unlike those here involved are familiar. For example, leave of court has been

a prerequisite to the filing of a complaint in *quo warranto* for many years; (Ill. Rev. Stat. 1953, chap. 112, par. 10) leave of court is required to file a suit in equity to restrain the disbursement of public funds by State officers; (Ill. Rev. Stat. 1953, chap. 102, par. 14) original *mandamus* proceedings in this court are required by Rule 46 to be instituted by a motion for leave to file a petition for a writ of *mandamus*. (Ill. Rev. Stat. 1953, chap. 110, par. 259.46.) So far as I am aware these have not been thought to violate the admonition of section 19 of article II. To the extent that that section of the constitution may be thought to have a bearing upon the validity of legislation, it adds so little to the due process clause that I would measure its breach, as it seems to me this court did in *Clarke* v. *Storchak*, 384 Ill. 564, by an appraisal of the reasonableness of the particular delay involved in terms of the objective which the legislature sought to accomplish. And so measured, I would conclude that the objection based upon section 19 of article II is not well taken.