Samuel CASTONZO, Sr., individually and as next friend of Samuel Castonzo, Jr., a minor, and John Landers, Sr., individually and as next friend of John Landers, Jr., a minor, Plaintiffs,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation, and Richard J. Witt, Defendants and Third-Party Plaintiffs,

and

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Third-Party Defendant.

Civ. No. 3566.

United States District Court
W. D. Wisconsin.

March 15, 1966.

Robert H. Krasnow, Chicago, Ill., Phillips, Phillips, Hoffman & Lay, Milwaukee, Wis., Kenneth H. Conway, Jr., Baraboo, Wis., for all plaintiffs.

Hart, Kraege, Jackman & Wightman, Madison, Wis., for defendants General Cas. Co. of Wisconsin and R. J. Witt.

Henry Field, Jr., of Roberts, Boardman Suhr & Curry, Madison, Wis., for defendant Castonzo, Jr., on counterclaim and for State Farm Mut. Auto. Ins. Co., third-party defendant.

JAMES E. DOYLE, District Judge.

In this action, grounded in diversity of citizenship, a minor driver and his father (the Castonzos), and a minor passenger in the Castonzo automobile and his father (the Landerses), have sued the driver of the other automobile (Witt) and his insurer (General Casualty). Witt and General Casualty have counterclaimed against Castonzo, Jr., for contribution in the event that Witt and General Casualty are determined to be liable to the Landerses. Witt and General Casualty have also filed a third-party complaint against State Farm, as insurer of the Castonzos, for contribution in the event that Witt and General Casualty are determined to be liable to the Landerses. Both the counter-claim and the third-party complaint allege that Castonzo, Jr., was "negligent".

The accident occurred in Wisconsin.

The Castonzos and State Farm have moved for summary judgment dismissing that portion of the counterclaim and that portion of the third-party complaint which seek contribution in the event Witt and General Casualty are determined to be liable to the Landerses. The basis for this motion for summary judgment is a contention: that the substantive law of Illinois should govern whether Landers, Jr., an Illinois domiciliary, as a non-paying guest, has a cause of action against Castonzo, Jr., also an Illinois domiciliary, as his host, and, therefore, whether the Castonzos and their insurer are obliged to contribute to a judgment which the Landerses might obtain against Witt and General Casualty; that under the substantive law of Illinois, a non-paying guest has no cause of action against his host in a motor vehicle case in the absence of pleading and proof that the host has been guilty of "wilful and wanton misconduct" (1957, July 11, Laws 1957, p. 2706, sec. 9–201); and that Witt and General Casualty have alleged only that Castonzo, Jr., has been guilty of negligence. The movants' argument is sound if the first proposition is sound; that is, if the substantive law of Illinois is to be applied. In determining whether to apply the substantive law of Illinois or the substantive law of Wisconsin, this court, in a diversity case, is obliged to follow the choice-of-law rule which a Wisconsin court would be obliged to follow. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

From the affidavits of the Castonzos, filed in support of the motion for summary judgment, and not controverted, it appears that: the Castonzo vehicle was usually garaged in the State of Illinois and was usually operated in the State of Illinois by members of the Castonzo family; the liability policy issued by State Farm, with respect to the Castonzo vehicle, was issued and delivered in Illinois; and no payment was made to anyone for the ride ·of Landers, Jr., in the Castonzo vehicle at the time in question. From the pleadings it appears, without dispute, that father and son Castonzo and father and son Landers

all reside in Illinois and all are citizens of Illinois. From the depositions of Castonzo, Jr., and Landers, Jr., it appears: that the accident occurred in the course of a day-long trip to Wisconsin to fish and to see the grandmother of Landers, Jr.; that the starting points of the trip were the respective Castonzo and Landers homes in Illinois; and that the intended destinations of the trip were the Castonzo and Landers homes in Illinois.

As has been said, the accident occurred in Wisconsin. It is not disputed in the pleadings: that the defendant Witt is a citizen of Wisconsin and resides in Wisconsin; and that defendant General Casualty, Witt's insurer, is a Wisconsin corporation, with its home office in Wisconsin. The pleadings are not explicit, nor is the information provided by affidavit, but it appears from the circumstances that the Witt policy was issued and delivered in Wisconsin.

Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965), is not only a guide to the kind of analysis which a Wisconsin court is expected to undertake with respect to tort choice-of-law problems generally. It is specific authority for the rule applied to the *Wilcox* facts. There, as here, the choice was to be made between a substantive rule that ordinary negligence makes a host liable to his non-paying guest and a substantive rule that only a higher degree of negligence or fault renders a host liable to his non-paying guest. There, as here, it was not the tort state but another state in which: the host and guest resided and were domiciled; the trip had commenced and was to end; the host's insurance company was domiciled; the insurance policy was written and delivered; and the automobile was usually garaged and operated. In *Wilcox*, it was decided that rather than the tort state, it was the state which bore these relationships to the issue of the degree of fault required for liability of host to guest, whose substantive rule should be applied to that issue. In *Wilcox*, this meant Wisconsin law. Here, it would mean Illinois law.

There are at least two major distinctions between the two situations, however: (1) In *Wilcox*, the state which enjoyed this overwhelming preponderance of connections was also the forum state. (2) In *Wilcox*, Nebraska, the tort state, enjoyed no relationship to the accident or to any of the parties involved or to the single vehicle involved or to the single insurance company involved or to the single insurance policy involved, save one: a Nebraska highway provided the physical setting for the accident. With this single exception, every factor in the construction of a significant relationship was Wisconsin's.

Here, Wisconsin is both the forum state and the tort state, but obviously it nevertheless enjoys no such numerical preponderance of connections with the event, the two sets of parties, the two vehicles, the two insurers, and the two insurance policies. Both Illinois and Wisconsin enjoy a substantial relationship to the action, in general, and to the issue of the degree of fault, in particular.

In this diversity action, our task is to apply *Wilcox* principles. *Wilcox* is a strong and thoughtful statement of approach and method. But because it breaks new ground, because the Supreme Court of Wisconsin has had no opportunity to develop it, *Wilcox's* direction presently to this federal court is not explicit.

Two themes are found in *Wilcox*:

One is that what the parties expect to happen should happen. The Wisconsin husband and wife, and the husband's Wisconsin insurer on a policy issued and delivered in Wisconsin, when the policy was written and delivered, when the husband and wife left on the trip, when the wife took the guest seat for the Nebraska portion of the trip, all expected the Wisconsin host-guest rule to apply. That the accident, when it happened, should have happened in Nebraska was "merely fortuitous"; this circumstance should not be a windfall to any defendant; the insurer should be bound by its bargain. *Wilcox*, at 632–633, 133 N.W.2d 408. To apply the Nebraska rule would be similar to the situation in which an American court

applies the law of Saudi Arabia to an action brought by an American citizen injured in Arabia as the result of the negligent operation of an automobile owned by an American corporation and operated by one of its employees. *Wilcox*, at 622, 133 N.W.2d 408, citing Walton v. Arabian American Oil Co., 233 F.2d 541 (C.A.2d, 1956). In the *Wilcox* situation, the Wisconsin constellation of parties and contracts and interrelationships should move through Nebraska insulated from Nebraska law, at least with respect to the standard of liability of host to guest.

There is a second theme in *Wilcox*. In tort actions involving "contacts" with two or more states, each particular issue is to be determined by considering "the relevancy of the contact in the terms of policy considerations important to the forum, *vis-a-vis*, other contact states." *Wilcox*, 26 Wis.2d at 633–634, 133 N.W.2d at 416. Upon close analysis, the policies underlying the respective rules of the contact states may or may not be found in true conflict. If not, no difficulty is encountered. If the conflict is true, then the choice should be the rule of the state whose relationship to the particular issue is the most significant. This requires evaluation of the contacts with the respective states not merely quantitatively, but "qualitatively in light of policy considerations". *Wilcox*, at 634, 133 N.W.2d at 417. " * * * [T]he law of the forum should persumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *Wilcox*, at 634, 133 N.W.2d at 416.

### The Parties' Expectations

This theme from *Wilcox* is applied with difficulty when, unlike *Wilcox*, two or more sets of parties are involved. Even in *Wilcox*, where only one set of parties was involved (the host husband and the guest wife), the "expectations" test is rather ephemeral and may beg the question. That is to say, the Wisconsin insurer in *Wilcox* which issued and delivered in Wisconsin a policy to a Wisconsin domiciliary covering an automobile garaged and usually operated in Wisconsin may reasonably be said to have expected that if an accident were to occur in Wisconsin, Wisconsin's ordinary negligence rule would apply to a resulting claim by a guest against its insured host. It seems less realistic to suppose that the insured entertained any expectation whatever with respect to future choice-of-law issues and how they might be resolved; however, a mild fiction may permit us to suppose that the insured and the insurer shared the same expectation. But in *Wilcox*, the court assumes that: "The policy was issued * * * in contemplation of possible liability under Wisconsin law * * *. The law of Wisconsin is the law of the place whose application was 'anticipated and insured against.' " Page 633, 133 N.W.2d page 416. Yet it seems unlikely that at the time the policy was issued, both the insurer and the insured expected that the automobile would not be operated outside Wisconsin or that an accident might not occur outside Wisconsin. The probabilities were that an accident would occur in Wisconsin and that a Wisconsin court would be the forum. But it was more than possible that an accident might occur elsewhere and that a state (or federal) court other than Wisconsin might be the forum. Thus, at least with respect to the presumably knowledgeable insurer, if not the insured, the law whose application was "anticipated and insured against" was the law which might be applied in this forum or that, depending principally, under the traditional conflicts rule, on the place of the accident.

The difficulty is compounded when we are required to consider the expectations of two sets of insurers and insureds. State Farm and Castonzo might reasonably have expected that if Castonzo became involved in an accident, it would probably occur in Illinois and be dealt with in an Illinois forum, and that there would be applied the Illinois standard of liability of host to guest. General Casualty and Witt might reasonably have expected that if Witt became involved in an accident with another automobile in which there was a guest, it would prob-

ably occur in Wisconsin and be dealt with in a Wisconsin forum, and that, for purposes of contribution, there would be applied the Wisconsin standard of liability of host to guest.

Required as we are to make a conscientious effort to apply this "expectations" theme from *Wilcox*, we are constrained to give somewhat greater weight to the State Farm-Castonzo expectations, since their insurance contract relationship is directly affected by the choice of the law to be applied to Castonzo as host. The General Casualty-Witt insurance contract relationship is certainly affected by the choice of the law to be applied to Castonzo as host, but indirectly and by virtue of the law of contribution.

### Qualitative Evaluation of Contacts in Light of Policy Considerations

The balancing of the expectations of insurers and insureds may point in one direction, while a qualitative evaluation of the contacts with the respective states in light of policy considerations may point in another. For example, *Wilcox* strongly suggested that Nebraska's rules of the road might well be applied by the Wisconsin court (page 634, 133 N.W.2d 408); if these rules should differ sharply from Wisconsin's, the result might be a surprise to the insurer and the insured and might fall well outside their expectation.

In any event, we turn to the policies underlying the respective laws of Illinois and Wisconsin with respect to the standard of liability of host to guest.

The policy objectives underlying the statutes of many states requiring more than ordinary negligence in host-guest situations (the Illinois-type "wilful and wanton" statute among them) are familiar:

There should be a distinction between the standard of liability imposed upon a host prompted by generosity and the standard imposed upon a host rendering service for hire; charitable impulse should not be restrained by fear of its consequences; the recipient of generosity should not be permitted to gain more than the ride itself; the best interests of people in their relation to each other should be promoted. Clark [Clarke] v. Storchak, 384 Ill. 564, 579 [52 N.E.2d 229] (1944), appeal dismissed, 322 U.S. 713 [64 S.Ct. 1270, 88 L.Ed. 1555] (1944). Ingratitude of a guest to a kindly host should be prevented; the opportunity for collusive host-guest suits should be limited; and, simply, the host and his insurer should be protected from judgments. *Wilcox*, supra [26 Wis.2d] at 632 [133 N.W.2d 408] (with respect to statutes of the Nebraska type).

Two principal policy factors emerge: (1) to protect the courts from collusive host-guest suits; and (2) to insulate generous hosts from claims by guest-passengers.

■ There seems little reason to give effect to policy (1) in a Wisconsin forum. Protection against collusive suits is of primary concern, perhaps exclusive concern, to the forum. Illinois may choose to protect its courts from collusive host-guest suits by applying the "wilful and wanton" standard to the guest's claim. Wisconsin chooses not to employ this particular device to protect its courts from such collusive suits. Since the courts of Wisconsin (and the federal court sitting in Wisconsin) must deal with the present lawsuit, no purpose is served by importing Illinois' protective device.

Whether Illinois' policy (2) is entitled to vindication in a Wisconsin court is much more puzzling. The policy of insulating generous hosts from claims by guest-passengers is itself puzzling. Is it purely a matter of morals or sentiment that generous people should not be penalized, or that one who obtains a free ride is entitled to nothing more? Is it a categorical imperative? Or is it functional in some respect? For example, if automobile drivers are not discouraged from giving free rides to others will this relieve the strain upon the streets and parking lots and public transportation

systems in metropolitan areas? Does Illinois assume that guest-passengers enjoy greater financial reserves than hosts, so that they can better meet the medical and hospital expenses flowing from injuries to guests? It seems unlikely, but may it be that Illinois assumes the guest-passengers are more adequately insured against the risks to themselves than are hosts against risks to their guests? How does the Illinois policy affect the possibility that it may become necessary to draw upon public resources to meet the medical and hospital expenses of injured guest-passengers? Is the policy which is reflected in the Illinois statute more entitled to vindication in another forum when the guest-passenger is unrelated to the host, as is apparently true in this Landers-Castonzo situation, than when the guest and host are members of the same family?

Questions abound. Whether the "qualitative" analysis of policy considerations encouraged by *Wilcox* entitles us to consider the wisdom or rationality of Illinois policy as compared with Wisconsin policy is doubtful. More likely we must refrain from questioning its wisdom or rationality, and confine our inquiry to the strength of the claim that this particular Illinois policy should be enforced in this particular situation. So viewed, the claim for application of Illinois policy has elements of strength. Landers, as guest-passenger, joined Castonzo, as host, in Illinois for a brief round-trip to Wisconsin and back to Illinois. The umbrella of Illinois policy protected the host from his guest during the Illinois portion of the trip. A persuasive argument can be made that the protection should continue through the relatively brief Wisconsin portion of the trip.

Wisconsin's policy in host-guest situations, on the other hand, is: "to provide compensation to a person when he has been negligently injured. The reasons for this policy are manifold. Among them are that the wrongdoer should bear the cost of an injury because of his causal fault and not the injured party

(unless he is equally at fault) or the state authorities or those who have furnished medical services, and that to the extent that damages in a negligence action are punitive, it is hoped that the burden of a judgment may deter like conduct by others." *Wilcox*, supra, 26 Wis.2d at 631–632, 133 N.W.2d at 415.

▮ There appear to be three factors underlying the Wisconsin policy in host-guest situations: (1) that justice requires that the wrongdoing host, rather than the innocent or relatively innocent guest-passenger, bear the costs of his wrongdoing; (2) that the cost of medical and hospital services to an injured guest-passenger should not be borne by those who furnish them or by the public; and (3) that punishing the wrongdoing host may deter him and others from similar conduct.

▮ The first policy-factor appears simply to contradict the moral judgment or sentiment which underlies the Illinois rule. Wisconsin considers it fair that a guest invited by a host to ride in an automobile should be entitled to rely on the care which the host will exercise; Illinois considers it fair that the host be obliged only to provide the ride and to refrain from wilful and wanton misconduct. In this conflict we believe that the Illinois policy is probably entitled to primacy as applied to this particular host and guest on this particular trip, for reasons given above.

The second factor in Wisconsin policy —protecting Wisconsin doctors and hospitals and Wisconsin taxpayers from the burden of the guest's medical expenses— makes a serious claim to recognition. However, in the case of a guest who is an Illinois domiciliary, the potential risk to Wisconsin doctors and hospitals and to Wisconsin taxpayers is rather limited. Except in most unusual circumstances, it may be expected the guest would return to Illinois for such extended, and perhaps expensive, medical and hospital care as may be required.

The third factor in Wisconsin policy— deterring similar negligence on the part

of the same or other host-drivers—enjoys a substantial claim to recognition. We appreciate that it has been sharply and frequently questioned whether rules governing civil liability have much, if any, deterrent effect in relation to ordinary negligence in automobile cases, as contrasted with intentional torts. See Weintraub, "A Method for Solving Conflict Problems—Torts", 48 Cornell L.Q. 215, 228 (1963). However, as we have refrained from examining the wisdom or rationality of Illinois policy, so we refrain here from examining the efficacy of Wisconsin policy. The Wisconsin Supreme Court tells us that "it is hoped" by Wisconsin that application of the ordinary negligence rule to a host-driver will deter him and other host-drivers in the future. *Wilcox*, at 632, 133 N.W.2d 408. It is enough that Wisconsin entertains this hope. Because this accident happened on a Wisconsin highway, and because the accident rate of Wisconsin highways is presumably affected by the application of this factor in Wisconsin policy, it is entitled to a high place in the hierarchy of recognition of policy factors.

Thus, it appears that there is a true conflict between the claims to recognition of one or more Illinois policies and one or more Wisconsin policies in determining the standard to be applied to host–Castonzo's liability to guest–Landers, and thus to the vulnerability of Castonzo and State Farm to a contribution claim by Witt and General Casualty.

In view of the preceding discussion, there is no need to underline the degree of difficulty which marks the resolution of the conflict. We resolve it in favor of the application of the Wisconsin host-guest rule. Assuming that the competing claims to recognition are rather evenly balanced between the Illinois and Wisconsin policy interests, we read *Wilcox* to direct that the law of Wisconsin, as the forum state, should be applied. " * * * [T]he law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *Wilcox*, at 634, 133 N.W.2d at 416. We invoke this presumption, as

we believe a Wisconsin court would be bound to do in a similar situation.

A further word seems in order. We have said that *Wilcox* requires, by virtue of a presumption, that the law of the forum be applied "unless it becomes clear that nonforum contacts are of the greater significance." We have honored that requirement. But in a sense, should such a presumption acquire force and dominance in the application of *Wilcox*, then the virtues of *Wilcox* may be dissipated and a lesser, but significant, rigidity may reappear in choice-of-law situations. Therefore, we take comfort in a further consideration, not expressly dealt with in *Wilcox*, which seems to support the result we reach here.

This further consideration arises out of the very concept of contribution. "The principle or doctrine of contribution is one of equality in bearing a common burden." 18 Am.Jur.2d 6 (1965). If driver Castonzo and driver Witt are both ultimately determined to have been guilty of ordinary negligence, and if guest Landers' injuries resulted from their combined ordinary negligence, there is justice in requiring them to contribute to a judgment according to their respective percentages of the total causal ordinary negligence. We appreciate the logical dilemma involved. The right of contribution has been described "as the right of one who has discharged a common liability or burden, to recover of another, also liable, the aliquot portion which he ought to pay or bear * * *." 18 Am.Jur.2d 6 (1965). Thus, if host Castonzo is "also liable" to guest Landers, then Witt should be entitled to contribution. Of course, whether Castonzo is "also liable" to Landers is the very question with which we have wrestled. The point is, however, that in accidents involving "contacts" with two or more states, but also involving two or more automobiles, two or more drivers, one or more guests, and two or more insurers and policies, perhaps there should be some muting of *Wilcox*'s emphasis upon finely separating the issues and then analyzing the choice-of-law considerations as they apply to

each such issue. At least in the standard of care imposed upon the drivers, with respect to the claims of any and all parties, whether passengers or not, perhaps there is virtue in uniformity. Uniformity would provide a rational underpinning for the operation of the law of contribution in these situations, with its Wisconsin comparative-negligence corollary. The function served would be the function of spreading the risk and spreading it fairly. An invisible umbrella of out-of-state law and policy would not provide immunity to one of several drivers (and his insurer) when all are guilty of the same kind of wrongdoing, however their respective shares in it may vary.

For the reasons given, and upon the entire record herein, the motion for summary judgment is denied.