(No. 26828.—

MARGARET CLARKE, Admx., Appellant, *vs.* SIMON STOR-CHAK, Appellee.

*Opinion filed Nov. 19, 1943—Rehearing denied Jan. 12, 1944.*

Owens & Owens, (Thomas L. Owens, and Albert E. Jenner, Jr., of counsel,) for appellant.

Miller, Gorham, Wescott & Adams, (Herbert C. DeYoung, of counsel,) for appellee.

Mr. Justice Thompson delivered the opinion of the court:

The plaintiff, Margaret Clarke, administratrix of the estate of her deceased husband, Samuel R. B. Clarke, brought suit in the circuit court of Cook county, under the Injuries Act, to recover damages sustained when her husband was killed on July 18, 1939, while riding as an alleged passenger in the automobile of defendant, Simon Storchak.

The automobile in which the deceased was riding was being driven by defendant in a northerly direction on State highway No. 42, toward Waukegan, Illinois. When it reached a point approximately one block south of where it subsequently plunged through the iron post and wire-netted rail above Downey road which was an underpass, it took a sudden turn to the left and went diagonally across the road for a distance of about 150 feet and off the pavement on the left side of the road. After traveling off the pavement about 150 feet more, it went diagonally to the right across the road for a distance of approximately 150 feet, at which point along the highway the automobile plunged through the railing to the underpass below. Although the automobile had been traveling at a speed vary-

ing from 35 to 65 miles an hour, at the time it suddenly
turned to the left it was being driven at a speed of approxi-
mately 45 miles an hour.

The complaint in one count consists of nine paragraphs.
Paragraph 5, subdivided into sections (a), (b), and (c),
charges ordinary negligence in the operation of the auto-
mobile, and paragraph 6, subdivided into sections (a), (b),
and (c), charges wilful and wanton conduct.

Defendant filed his answer and denied both paragraphs 5
and 6 of the complaint. He also set up additional defenses
as a part of his answer, alleging that in paragraph 5 of
plaintiff's complaint and subparagraphs (a), (b), and (c),
the plaintiff failed to state a cause of action, because at the
time and place of said accident the deceased was riding
as a guest, and further, that the deceased knew or saw, or
in the exercise of due care and caution should have known
and seen, the manner in which defendant's automobile was
being operated.

Plaintiff filed an amended reply containing six para-
graphs, and denied, in paragraphs 1 and 2, every allega-
tion of fact contained in the additional defenses. In para-
graphs 3, 4, and 5, she states, her action being brought by
virtue of the authority granted in section 1 of the Injuries
Act, she is not deprived of her right of action by the pro-
visions of section 42-1 of the Motor Vehicle Act; (Ill. Rev.
Stat. 1941, chap. 95½, par. 58a;) that said section 1 was
not amended by section 42-1; that if it was, as contended
by defendant, such section 42-1 is unconstitutional, being
in violation of section 13 of article IV, of the constitution
of the State of Illinois; that this section provides that no
act can embrace more than one subject which shall be ex-
pressed in its title; that said section 42-1 is void in so far
as it purports to limit her right of action under section 1
of said Injuries Act to wilful and wanton conduct. Para-
graph 6 of the amended reply, which was amended at the
time the court passed on the motion for a new trial, read

as follows: "That said Section 58-A of the Motor Vehicle Act is unconstitutional in that it attempts to deprive the plaintiff of the rights given to her by virtue of the Fourteenth Amendment to the Constitution of the United States and Section 2 of Article 2 of the Constitution of the State of Illinois." The amended reply originally filed did not refer to section 19 of article II of the constitution, otherwise the language was the same.

A motion was filed by defendant under date of October 18, 1940, to strike the reply of the plaintiff, which motion was made before the reply was amended to include section 19 of article II. On June 23, 1941, an order was entered denying the motion to strike the amended reply of the plaintiff as to paragraphs 1 to 2, inclusive, and sustaining the motion to strike paragraphs 3 to 6, inclusive. The paragraphs stricken were those referring to the constitutional questions as presented.

At the close of plaintiff's case the court sustained the motion by the defendant instructing the jury to find that plaintiff could not recover under paragraphs 6(a), 6(b), and 6(c) of plaintiff's complaint, and on the motion of the defendant, at the close of all the evidence, to direct a verdict as to paragraphs 5(a), 5(b), and 5(c) of the complaint, the court reserved its ruling. The jury answering special interrogatories that the deceased was a guest and not a passenger for hire, returned a verdict finding the defendant "not guilty." Motion for a new trial was made which was overruled by the court and judgment entered, from which this appeal followed.

It is urged by the defendant that there is no constitutional question involved and that the appeal should be transferred to the Appellate Court for the First District, and *Hillmer* v. *Chicago Bank of Commerce*, 378 Ill. 449, and *Jenisek* v. *Riggs*, 381 Ill. 290, are cited in support of such contention.

In the *Jenisek case* the plaintiff there, seeking to save a constitutional question, filed a motion for leave to amend his motion for a new trial by adding a nineteenth paragraph assailing the constitutionality of section 51(a) of the Uniform Traffic Act on the ground that it transcended section 1 of the fourteenth amendment of the Federal constitution and section 2 of article II of our constitution. In denying this motion to amend, the trial court specifically pointed out that the proposed amendment attempted to present a question as to the validity of the statute not raised in the pleadings, not argued, not set forth in any instructions, nor in the motion for a new trial and not asserted at any time during the trial.

In the instant case the question of the constitutionality of section 42-1 was presented in the pleadings. The motion of defendant, to strike the reply of plaintiff to defendant's answer, recognized that the unconstitutionality of section 42-1 was presented by the reply, and requested to have the same stricken.

Plaintiff may plead as many "matters in reply" as she may have, but each must be separately designated and numbered. (Ill. Rev. Stat. 1941, chap. 110, par. 167, sec. 43.) The motion to strike as to paragraphs 3 to 6, inclusive, which included questions as to the constitutionality of section 42-1 was allowed and evidently the court considered such questions as raised. It was set out in the motion for a new trial particularly that the court erred in striking paragraphs 3 to 6 of the amended reply of plaintiff to the answer of the defendant. Before this court will assume jurisdiction of an appeal on the ground that a constitutional question is involved it must appear from the record that a fairly debatable constitutional question was urged in the trial court. The ruling on it must be preserved in the record for review and error must be assigned upon it in this court. (*Jenisek* v. *Riggs*, 381 Ill. 290; *Hillmer* v. *Chicago Bank of Commerce*, 378 Ill. 449.)

That such fairly debatable question was urged in the trial court and the ruling preserved can hardly be questioned.

The defendant contends the appeal should be dismissed. We have examined the record, including the notice of appeal as filed, and cannot agree that plaintiff's appeal should be dismissed by reason of the order not being final or appealable.

We are next confronted with the crux of this case: The validity of section 42-1 of the Motor Vehicle Act as amended, known as the "guest statute," which provides in brief that a gratuitous guest passenger, if while riding with someone else, is injured or killed, or has his property damaged, no right of action exists against the driver of the vehicle, unless the driver was guilty of wilful and wanton misconduct. In this case it is urged 'that section 42-1 of the act is unconstitutional, being in violation of section 13 of article IV and sections 2 and 19 of article II of the constitution of the State of Illinois and section 1 of the fourteenth amendment to the constitution of the United States.

Plaintiff contends that, as she filed her cause of action under the Injuries Act, (Ill. Rev. Stat. 1941, chap. 70, par. 1, sec. 1,) which provides a remedy and gives a right of action in cases of death by the negligence or wrongful act of another, she is to look solely to that act for her cause of action unless it could be said that section 42-1 of the Motor Vehicle Act amends the Injuries Act, and in such case it could be of no avail because it violates section 13 of article IV of the constitution. For a correct solution of the question urged it is first necessary to determine if plaintiff has, by the Injuries Act, an absolute cause of action. We do not think under the authorities of this court it can be said the Injuries Act gives an absolute remedy. Where action is brought under the Injuries Act in death cases the plaintiff must bring himself within the conditions of the act, (*Bishop* v. *Chicago Railways Co.*

303 Ill. 273,) one of which predicates an action for death on the condition a suit could be maintained if the deceased had survived. If the deceased would have had no right of action at the time of his injury, the personal representative has none under the Injuries Act. (*Biddy* v. *Blue Bird Air Service,* 374 Ill. 506; *Mooney* v. *City of Chicago,* 239 Ill. 414.) In a suit under the Injuries Act the cause of action is the wrongful act and not merely the death itself. (*Biddy* v. *Blue Bird Air Service,* 374 Ill. 506; *Mooney* v. *City of Chicago,* 239 Ill. 414.) Whether deceased could have brought his action against the defendant had he continued to live, is determined by the substantive law then in force. And this brings us to the question, does section 42-1 of the Motor Vehicle Act amend section 1 of the Injuries Act.

Section 42-1 of the Motor Vehicle Act, the so-called "guest statute," was passed by the General Assembly in 1935 and approved on July 9, 1935. The act repealed certain acts therein named and, as amended, added section 42-1, which provides in part as follows: "No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

Plaintiff contends this section amends section 1 of the Injuries Act and that it is unconstitutional and void on the ground that it violates section 13 of article IV of the constitution of the State of Illinois, which provides in part as follows: "No act hereafter passed shall embrace more

than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed; and no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." We fully agree that if it could be said that the guest statute was intended to amend the Injuries Act, such section would be unconstitutional and void in violation of section 13 of article IV of the constitution, which provides that no act of the legislature shall embrace more than one subject, which subject shall be expressed in its title. We so held in the case of *People* v. *Mahumed,* 381 Ill. 81, where this court, at page 83, said, in discussing the same constitutional provision: "If the act contains matters which have no proper connection with, or relation to, the title, or the title itself contains subjects without any proper relation to each other, the constitutional restraint is violated." Here, however, the guest statute is a part of a complete act in itself and it appears to have been properly included in the Motor Vehicle Act. The amendatory act of 1935, adding the so-called "guest statute," repealed certain sections of the Motor Vehicle Act and added certain others. If the particulars are incidental or germane to the general title or main purpose of the Motor Vehicle Act and show a furtherance of the one scheme or purpose of the act, the title is single and the act embracing the same general subject and particulars is valid. (*Campe* v. *Cermak,* 330 Ill. 463; *People ex rel. Kell* v. *Kramer,* 328 Ill. 512; *People ex rel. Longenecker* v. *Nelson,* 133 Ill. 565.) This question can not be determined by considering the title alone but the body of the act must be looked to to determine whether but one purpose is included. If all the provisions of the act are fairly referable to one general scheme or purpose and that one purpose is expressed in the title the act is

valid. (*Campe* v. *Cermak*, 330 Ill. 463; *People* v. *Kramer*, 328 Ill. 512.) Plaintiff is in error in contending that section 42-1 of the Motor Vehicle Act is an attempt to amend the Injuries Act and her contention is founded upon the wrong premise that section 1 of the Injuries Act, as to a recovery, cannot be affected by any other statute. A guest has no vested rights prior to the infliction of an injury and cannot object to legislation, restricting his right by limiting it to gross negligence as a ground of recovery, which became effective before the injury. *Shea* v. *Olson*, 185 Wash. 143, 53 Pac. (2d) 615, 186 Wash. 700, 59 Pac. (2d) 1183, 111 A. L. R. 998.

Plaintiff urges that section 42-1 of the Motor Vehicle Act is unconstitutional because it violates section 19 of article II of the constitution of Illinois, which provides as follows: "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay," and cites, in support of her contention, the case of *Ludwig* v. *Johnson*, 243 Ky. 533, 49 S. W. (2d) 347, where that case, reviewing cases from many other States having guest statutes similar to that of our State, held such statute unconstitutional. In that case one Ludwig alleged in his petition that he was injured while riding in an automobile being operated by Darwin Johnson and that his injuries were caused by the negligence of the latter. After a demurrer was overruled to the petition, Johnson filed an answer which was in two paragraphs. The first paragraph was a traverse, and in the second paragraph the defendant alleged that on the occasion referred to in the petition the plaintiff was being transported in the automobile being operated by defendant as the defendant's guest. The second paragraph of the answer further stated facts constituting a defense to the cause of action set up

in the petition if the act of the General Assembly of 1930, commonly known as the "guest statute" is valid. (Chapter 85, Acts 1930, Baldwin's 1931 Supplement to Carroll's Kentucky Statutes, sec. 12-7.) That act, including the title, reads: "An Act releasing owners of motor vehicles from responsibility for injuries to passengers therein. * * * No person transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation shall have a cause of action for damages against such owner or operator for any injuries received, death, or any loss sustained, in case of accident, unless such accident shall have resulted from an intentional act on the part of said owner or operator." It was appellant Ludwig's contention there that the act violated sections 14, 54 and 241 of the Kentucky constitution, and was therefore void. Prior to the enactment of the guest statute in that State the rule was well settled that the driver of an automobile owed an invited guest the duty of exercising ordinary care in its operation. Section 241 of the constitution of Kentucky provides in part: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person." The court held there that the guest statute violated the spirit of their constitution as well as its letter, as found in sections 14, 54 and 241, that it was the manifest purpose of the framers of that instrument to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury. We find no provision in our constitution that could be compared with section 241 of the constitution of Kentucky. The provisions there are specific that in cases of death resulting from an injury

which was inflicted by negligence or wrongful act, damages may be recovered for such death. Section 54 of the Kentucky constitution restricts the General Assembly in placing any limit on the amount to be recovered for injuries resulting in death or for injuries to person or property. Such provisions are not comparable to our constitution. We are in this respect restricted only by our due process clause and the clause prohibiting the destruction of remedies. Section 14 of the Kentucky constitution provides that courts shall be open and speedy trials guaranteed, and that persons, for any injury to their lands, goods, person, or reputation, shall have a remedy by due course of law. This section, of course, compares with sections 2 and 19 of article II of our constitution, as to providing a broad field for the protection of persons in their property and reputation, but this does not give a vested right not subject to change by legislative power, provided the change is reasonably necessary to promote the general welfare of the people and does not destroy a remedy. With the growth and development of the State the police power necessarily develops, within reasonable bounds, to meet the changing conditions. (*People* v. *Rosehill Cemetery,* 334 Ill. 555; *Public Utilities Com.* v. *City of Quincy,* 290 Ill. 360.) The power is not circumscribed by precedents arising out of past conditions, but is elastic and capable of expansion in order to keep pace with human progress. (*People* v. *Rosehill Cemetery,* 334 Ill. 555; *City of Aurora* v. *Burns,* 319 Ill. 84.) The constitutional provisions of the State of Kentucky above discussed, not being similar to ours, could not be controlling in this case and aid but little in helping to solve the questions here presented.

We have examined the case of *Stewart* v. *Hauk,* 127 Ore. 589, 271 Pac. 998, but this is easily distinguished because the statute there relieved the operator from all liability. Later, another guest statute was enacted providing that no gratuitous motor vehicle guest should have a cause

of action for damages against the owner or operator, for accidental injury, death or loss, unless the accident was caused by the owner's or operator's gross negligence, intoxication or reckless disregard of the rights of others, and in the case of *Perozzi* v. *Ganiere*, 149 Ore. 330, 40 Pac. (2d) 1009, it was again contended the statute was unconstitutional because it violated section 10 of article 1, being the "due process" clause of the Oregon constitution. In that case the court summed up the various questions arising where the guest statute was involved and after doing so, held that the statute, as enacted, was clearly within the police power of the State and was an attempt by the legislature to correct what it considered a growing evil.

Courts and law writers have found it difficult to find the extent and boundaries of "police power." It certainly extends to the protection of the lives, health and property of the citizens and to the preservation of good order and public morals. Legislation under the police power of the State is not confined to public health, safety or morality, but may extend to matters in the interest of the public welfare or convenience. (*State* v. *Bassett,* 100 Conn. 430, 123 Atl. 842, 37 A. L. R. 131.) A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interest. (*Cotter* v. *Stockel,* 97 Conn. 239, 116 Atl. 248; *Silver* v. *Silver,* 108 Conn. 371, 143 Atl. 240.) It is, of course, true that the statute here imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he was required at common law to exercise toward a passenger who pays for his transportation. Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of law. As, for example, between the gratu-

itous bailee and the bailee for hire, the common carrier and the private driver, the innkeeper and the ordinary social host. In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. *Massaletti* v. *Fitzroy*, 228 Mass. 487, L. R. A. 1918C, 118 N. E. 168.

So-called "guest statutes" somewhat similar to the one under consideration have been enacted in a number of States and many of them have been declared or treated by the respective States as valid. (*Silver* v. *Silver*, 108 Conn. 371, 143 Atl. 240, 65 A. L. R. 943, affirmed by the Supreme Court of the United States, 280 U. S. 117, 50 S. Ct. R. 57; *Naudzius* v. *Lahr*, 253 Mich. 216, 234 N. W. 581; *Sorrell* v. *White*, 103 Vt. 277; *Siesseger* v. *Puth*, 211 Iowa, 775; *Shea* v. *Olson*, 185 Wash. 143, 53 Pac. (2d) 615.) In the *Shea* v. *Olson case*, a statute providing that invited gratuitous guests should have no right of action against the owner or operator of a motor vehicle, unless the accident was intentional on the part of the owner or operator, was held valid under the police power of the State, and in the case of *Perozzi* v. *Ganiere*, 149 Ore. 330, 40 Pac. (2d) 1009, heretofore mentioned, a guest statute was likewise held clearly within the police power of the State. So also in *Gallegher* v. *Davis*, 183 Atl. (Del.) 620, a statute relieving the owner or an operator of a vehicle from liability for injury or death to a gratuitous guest, unless the accident was intentional on the part of the owner or operator or was caused by his wilful or wanton disregard of the rights of others, was held a valid exercise of police power.

It is the proper function of the legislative department of government, in the exercise of the police power, to consider the problems and risks that arise from the use of new inventions and endeavor to adjust private rights and

harmonize conflicting interests by comprehensive statutes for the public welfare. (*People* v. *Linde*, 341 Ill. 269; *Smith* v. *New England Aircraft Co.* 170 N. E. (Mass.) 385.) That there should be a difference between the liability of a person who, out of the generosity of his heart, renders gratuitously some service to his fellow traveler over those rendering such service for hire and barter, can hardly be questioned. Those who are charitably inclined should not be restrained by fear of the consequences of their own charitable act and the recipients should not be permitted to gain by the generosity of their host. Undoubtedly the legislature, in adopting this act, was aware of the frequency of litigation in which passengers, carried gratuitously in automobiles, have sought the recovery of large sums for injuries alleged to have been due to negligent operation, and where, in the use of the automobile, which is almost universal, generous drivers might find themselves involved in litigation that often turned upon questions of ordinary negligence. It was evidently the intention of the legislature not only to correct this abuse but to promote the best interests of the people in their relation to each other. The only limitation upon the legislature in the exercise of its police power is that the act must reasonably tend to correct some evil or promote some interest of the State and not violate any positive mandate of the constitution. The "guest statute" does not violate the "due process" clause of the Federal constitution, nor sections 2 or 19 of article II of our constitution, and is valid under the police power of the State.

It is urged by the plaintiff that the trial court erred in withdrawing from the consideration of the jury paragraphs 6(a), 6(b), and 6(c) of her complaint and in instructing the jury that the plaintiff could not recover under those charges of wilful and wanton conduct. It is therefore necessary to examine the record to determine whether there is any evidence, which taken with its intendments

most favorable to the plaintiff, tends to prove the charges as referred to in the complaint. We have heretofore referred, in some detail, to the facts in this case. As to this phase of the case plaintiff's right to recover is consequently dependent upon proof that the accident causing the injuries was occasioned by defendant's wilful and wanton misconduct. Ill-will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, make a case of constructive or legal wilfulness. *Bartolucci* v. *Falleti*, 382 Ill. 168; *Streeter* v. *Humrichouse*, 357 Ill. 234.

Plaintiff contends that during the entire time defendant did not at any time reduce the speed of the automobile, did not apply his brakes, either foot or emergency, but continued recklessly ahead so the automobile was going as fast when it completed its journey back and forth across the road as when it started, and that these facts should have been submitted to the jury upon the question of defendant's wilful and wanton conduct. A failure to comply with a speed statute for automobiles does not necessarily establish wilfulness or wantonness. The rate of speed and the attending circumstances must also be taken into consideration. (*Bartolucci* v. *Falleti*, 382 Ill. 168; *Streeter* v. *Humrichouse*, 357 Ill. 234.) From the evidence, therefore, it seems there was no excessive speed and it is not shown there were other circumstances which would render the speed sufficiently dangerous to establish wilful and wanton conduct. Failure to apply the brakes

is not enough without sufficient attending circumstances. The question as to just what caused the car to take a sudden turn to the left after it ran off the highway is uncertain. The only witness present testified he could not say that he felt or noticed any of the wheels of the car drop before the car started to sway to the left, as he said: "I really don't know that." He was interrogated as to former statements he had made while in the hospital but his answers were not satisfactory and while he did not deny that certain questions were asked and answers given, he stated he just did not remember the statements made. It is significant at the time he was interrogated as to his statement at the hospital when inquiry was made as to what happened when the wheels struck the dirt portion of the shoulder and when he was asked if he did not answer at that time, "It just dug down deep," and when the question was repeated he answered, "Well, we may have."

It would seem, from the evidence, that the accident was due to the wheels striking the dirt portion of the shoulder while defendant's car was traveling at 45 miles per hour, and that the defendant in turning to get back on the pavement, lost control and plunged to the underpass below. It is evident that when defendant's car first went onto the shoulder and he attempted to return to the pavement, he lost control of its operation, which he never regained. Certainly it could not be said that, under the circumstances as shown here, his act in losing control of the operation of the automobile was an intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences or that, in doing the act or failing to act, he was conscious of his conduct, and, though having no intent to injure, was conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct would naturally and probably result in injury. The acci-

dent occurred in the daytime on a main highway, where there were no other cars about, and without obstruction of any kind to warn the driver, or circumstances which would require the driver of an automobile to be on his guard.

Construing the evidence most favorably to plaintiff, together with all reasonable inferences arising therefrom, there is a conspicuous lack of proof: (a) of any consciousness on the part of defendant that his conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty; (c) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences. *Bartolucci* v. *Falleti,* 382 Ill. 168.

Plaintiff contends the trial court erred in its ruling upon the admission of evidence growing out of a lengthy examination and cross-examination of the defendant, in which he was permitted to testify concerning the occurrence. The witness for this purpose was clearly incompetent. (Ill. Rev. Stat. 1941, chap. 51, par. 2.) Had plaintiff insisted upon the application of this rule of evidence defendant would not have been permitted to testify. However, plaintiff, at the time defendant was called, by her counsel stated: "I am not objecting to his testifying to anything which would be brought forth on direct examination concerning the occurrence." She further proceeded to cross-examine the defendant at great length after he had so testified. By failing to object to the competency of the witness, she waived her rights in that respect.

We have examined the other objections raised by plaintiff as to the admissibility of testimony, as well as exhibit 1, which was referred to in the abstract as the complaint of Burns v. Storchak, but do not find they were of such a prejudicial character that a different result would have followed had they been excluded. (*Chicago City*

*Railway Co.* v. *Lowitz,* 218 Ill. 24.) Plaintiff contends the trial court erred in permitting improper oral argument by counsel for defendant and in the giving of instructions and submission of interrogatories. As to the question of improper argument plaintiff contends counsel for the defendant in his argument read from instructions. It is, of course, improper for counsel to read the instructions to the jury as that is the court's function; however, the record reveals that there was some question as to whether counsel was reading or discussing the provisions of the statute and the court advised the jury that it was to take the law as given by the court under the instructions.

It is urged that the trial court refused to give an interrogatory submitted by plaintiff. The same question was presented in an interrogatory given at the request of the defendant and there was no error in this respect. Plaintiff contends the trial court erred in refusing to give the following instruction: "The court instructs the jury that the words, 'without payment for such ride' used in the 'guest statute' are not to be taken in their literal sense. One of the tests is whether the ride tends to promote the mutual interest of the passenger and the driver or whether there is any benefit solely to the driver, and, if so, the passenger is not a guest." By this, of course, it is plaintiff's contention that the words in the statute are not clear enough to be given to the jury without explanation. It is ordinarily the province of the court to determine whether a statute, or the language used in the statute, is clear enough to be given to the jury without explanation, and unless it can be said the failure to give such instruction is prejudicial to the rights of the parties, it is not error for the court to refuse such instruction. Even though it could be said the instruction was a correct statement of law, giving it would not change the result. (*City of Chicago* v. *Ingersoll Steel Corp.* 371 Ill. 183.) This was the only refused

instruction offered by the plaintiff. All others covering every phase of her case were properly submitted to the jury.

This case, by reason of the issues raised by the pleadings, presented to the court below and to this court many difficult problems for solution, but on the whole it was presented to the jury on its merits.

For the reasons assigned, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*