(No. 59237.

RICHARD OSTERGREN, Appellee, v. THE FOREST
PRESERVE DISTRICT OF WILL COUNTY *et al.*
(The Forest Preserve District of Will County, Appellant).

*Opinion filed October 19, 1984.—Rehearing
denied November 30, 1984.*

UNDERWOOD and GOLDENHERSH, JJ., dissenting.

Quinn & Broderick, of Chicago (Thomas C. Broderick, of counsel), for appellant.

Nevoral, Corrigan & O'Connor, Ltd., of Chicago (James A. Corrigan, Bernard R. Nevoral, and Bryan J. O'Connor III, of counsel), for appellee.

Michael W. Ward, of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for *amicus curiae* Forest Preserve District of Cook County.

JUSTICE CLARK delivered the opinion of the court:

On February 11, 1981, plaintiff, Richard Ostergren, was driving a snowmobile in the Sauk Trail Forest Preserve when the vehicle struck a trench. The plaintiff sustained a fractured cervical vertebra in the accident and filed suit in the circuit court of Will County on September 25, 1981. The plaintiff alleged that the negligence of the defendants, the Forest Preserve District of Will County, the Forest Preserve Board of Will County and the County of Will, was the proximate cause of his injuries. The trial court granted the County of Will's motion for summary judgment, and the action continued against the remaining defendants. On November 18, 1982, the trial court granted the forest preserve's motion to dismiss, holding that the plaintiff's cause of action was barred by the provisions of the Snowmobile Registration and Safety Act (Ill. Rev. Stat. 1981, ch. 95½, par. 605—1(I)). The plaintiff appealed, and the appellate court reversed, holding section 5—1(I) unconstitutional because it granted absolute tort immunity to the forest preserve (118 Ill. App. 3d 319, 323). We granted the forest preserve's petition for leave to appeal as a matter of right (87 Ill. 2d R. 317), and we now reverse the decision of the appellate court and affirm the deci-

sion of the trial court.

Section 5—1(I) provides, in pertinent part:

> "An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any unsafe condition or use of or structure or activity on such premises. This subsection does not apply where permission to snowmobile is given for a valuable consideration other than to this State, any political subdivision or municipality thereof, or any landowner who is paid with funds from the Snowmobile Trail Establishment Fund." Ill. Rev. Stat. 1981, ch. 95½, par. 605—1(I).

Section 5—1(I) was amended on January 5, 1984, to add the following language:

> "Nothing in this section limits in any way liability which otherwise exists for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 1983 Ill. Laws 7115.

We will confine our discussion to a single issue: whether section 5—1(I) violates the United States Constitution or the Illinois Constitution. The plaintiff argues that section 5—1(I) extinguishes his common law right of action to recover damages for his personal injuries. The forest preserve maintains that section 5—1(I) is a reasonable exercise of legislative power that should not be disturbed by this court.

The plaintiff's constitutional challenge is grounded in the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2 of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2) (constitutional guarantees of due process and equal protection). Limitations on governmental liability in snowmobile accidents are a fairly recent phenomenon. (See *Shockey v. Shields* (1975), 272 Or. 226, 536 P.2d 424; *Watson v. Zanotti Motor Co.* (1971), 219 Pa. Super. 96, 280 A.2d 670; see also Annot., 42 A.L.R.3d 1422 (1972).) Since section 5—1(I) has never been reviewed by this

court, the plaintiff bases his argument on related constitutional concepts. In *Clarke v. Storchak* (1943), 384 Ill. 564, this court upheld the Illinois guest statute (Ill. Rev. Stat. 1941, ch. 95½, par. 58a) against a constitutional challenge. The guest statute limited gratuitous automobile passengers in recovering from their drivers after an auto accident. The plaintiff argues that section 5—1(I), while somewhat analogous to the guest statute, because both statutes restrict plaintiffs' latitude in bringing personal injury actions, is different than the guest statute because section 5—1(I) "constitutes a deprivation of a remedy because under the facts of this case, no other remedy exists nor did the legislature substitute a remedy for that which was taken away by the enactment of this Section."

We have detected few cases from other jurisdictions with sufficient factual similarity to the case at bar. As we said earlier, snowmobile litigation is a relatively recent phenomenon in our courts. However, the New Mexico Court of Appeals recently upheld a similar statute against a constitutional challenge. In *Vandolsen v. Constructors Inc.* (N.M. Ct. App. 1984), 678 P.2d 1184, the plaintiff was injured when he drove a "dirt bike" into an excavation cut across a private road. The trial court granted defendant's motion to dismiss pursuant to a State statute limiting liability for property owners in such accidents. The court noted:

"The Legislature has enacted provisions almost identical to those in Section 66—3—1013(A) with respect to the operation of snowmobiles on private lands and landowner liability. NMSA 1978 sec. 66—9—10(A). Section 66—9—10(A) is part of the "Snowmobile Act" sec. 66—9—1 *et seq.*, which is also part of the "Motor Vehicle Code." It is not unreasonable for the legislature to identify snowmobiles and dirt bikes as presenting similarly acute problems for landowners that other vehicles have not caused." (N.M. Ct. App. 1984), 678 P.2d 1184, 1189.

We believe that section 5—1(I) is a reasonable exercise of the State's police power and does not contravene plaintiff's right to due process and equal protection. As this court noted in *Clarke*:

"Legislation under the police power of the State is not confined to public health, safety or morality, but may extend to matters in the interest of the public welfare or convenience. (*State v. Bassett*, 100 Conn. 430, 123 Atl. 842, 37 A.L.R. 131.) A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interest. (*Cotter v. Stockel*, 97 Conn. 239, 116 Atl. 248; *Silver v. Silver*, 108 Conn. 371, 143 Atl. 240.) It is, of course, true that the statute here imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he was required at common law to exercise toward a passenger who pays for his transportation. Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of law." *Clarke v. Storchak* (1944), 384 Ill. 564, 577.

In the case at bar, the legislature has implemented a different standard of care for tort liability in snowmobile accidents. This distinction is justified due to the inherent danger of snowmobile operation in private lots, public parks and forest preserves. (See Comment, *Snowmobiles — A Legislative Program*, 1972 Wis. L. Rev. 477; Comment, *Governmental Immunity in Illinois: The Molitor Decision and the Legislative Reaction*, 54 Nw. U.L. Rev. 588 (1959).) We cannot detect any basis for the plaintiff's argument that section 5—1(I) is an unconstitutional exercise of the State's police power. We also note that a related section of the Snowmobile Registration and Safety Act (Ill. Rev. Stat. 1979, ch. 95½, par. 605—2) has withstood a constitutional challenge in our appellate court.

(*People v. Meyer* (1980), 88 Ill. App. 3d 965.) In *Meyer*, the court upheld section 5—2's prohibition of snowmobile operation on a public highway against plaintiff's due process challenge. 88 Ill. App. 3d 965, 966.

The plaintiff further argues that section 5—1(I) contravenes article I, section 12, of the Illinois Constitution, which provides, in pertinent part:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly." Ill. Const. 1970, art. I, sec. 12.

Section 5—1(I) does not prevent the plaintiff from seeking a remedy for his injuries. The victim in a snowmobile accident can still sue the manufacturer, distributor or designer of the snowmobile, as well as other drivers, to name only a few of the myriad of possible defendants. Thus, the plaintiff's reliance on *Board of Education v. Blodgett* (1895), 155 Ill. 441, 450, is misplaced. Section 5—1(I) does not deprive a plaintiff of any remedy; it merely restricts the liability of landowners who would otherwise have to undertake massive repairs to make their property safe for snowmobiling.

We also note as a matter of public policy that the plaintiff's argument, if accepted, could make public parks useless for any recreational activities except snowmobiling. Forest preserves and public parks would have to be devoid of baseball mounds, streams, trenches and picnic equipment that could upset a speeding snowmobile. In *Maloney v. Elmhurst Park District* (1970), 47 Ill. 2d 367, this court upheld the constitutionality of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1965, ch. 85, par. 3—106). In *Maloney*, the plaintiff was injured while playing on an artificial hill in Elmhurst Park. This court ruled that the park district was immune from liability for injuries in

the park due to the legislative enactment governing governmental immunity. See generally, *Local Government Tort Immunity and Liability in Illinois*, 55 Ill. B.J. 28 (1966).

The plaintiff's next argument focuses on the alleged contradiction between section 5—1(I) and section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act, which provides in pertinent part:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition." (Ill. Rev. Stat. 1981, ch. 85, par. 3—102(a).)

We detect no contradiction between section 3—102(a) and section 5—1(I). Section 3—102(a) mandates a standard of ordinary care for people whom the entity intended and permitted to use the property. This clearly does not encompass snowmobiles, which are inherently dangerous instrumentalities. The legislature has determined that there is no duty to keep premises safe for snowmobiling, and this determination does not conflict with the general provisions of section 3—102(a).

Next, the plaintiff argues that we should consider the 1984 amendment to section 5—1(I) in determining the intent of the legislature. He maintains that the legislature was aware of constitutional infirmities in section 5—1(I) and enacted the amendment to remedy these infirmities. We believe this argument is without merit. This amendment became effective in January of 1984, long after the plaintiff was injured and this litigation had begun, and after the appellate court opinion had been filed. We de-

cline to give retroactive application to the 1984 amendment.

For the reasons stated, we reverse the appellate court and hold that the trial court properly dismissed the plaintiff's complaint and that section 5—1(I) does not violate the United States Constitution or the Illinois Constitution.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE UNDERWOOD, with whom JUSTICE GOLDENHERSH joins, dissenting:

Justice Goldenhersh and I believe that the complaint, in this case, even though amended, may still state a cause of action for wilful conduct. We also believe that the court errs in refusing to apply the 1984 amendment permitting recovery for a wilful failure to guard or warn against a dangerous condition. Citing no authority, the court holds the amendment inapplicable, saying that it became effective long after the injury occurred and this litigation began. Noting that its effective date was subsequent to the filing of the appellate court opinion, the majority concludes: "We decline to give retroactive application to the 1984 amendment." (104 Ill. 2d at 135-36.) The rule, however, as we understand it, is clearly to the contrary. Our opinions consistently hold that, absent due process problems which are not present here, relevant legislation does apply at the appellate stage. In fact, we have just said in *People v. Fernetti* (1984), 104 Ill. 2d 19, that "[i]t has long been recognized that a change in law will be given effect while a case is on direct review. [Citations.] This rule applies where a judicial decision has intervened, as well as where a statutory change has altered the law. [Citation.]" (104 Ill. 2d 19, 22.) Our earlier opinions are to the same effect. "Where no vested rights are involved this court must decide the issues on the law

as it stands at the time of our decision and not as of the time the cause of action accrued ***." *Hughes v. Illinois Public Aid Com.* (1954), 2 Ill. 2d 374, 378; *Rios v. Jones* (1976), 63 Ill. 2d 488, 494-95; *People ex rel. Bauer v. Elmhurst-Villa Park-Lombard Water Com.* (1960), 20 Ill. 2d 139, 144; *Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306, 310.

Since the amendment is, in our judgment, clearly applicable, we would consider the sufficiency of the complaint under the 1984 amendment, and, if it is found sufficient to state a cause of action under the amendatory act, remand the case for trial.