JEAN MOON, Independent Adm'r of Estate of Timothy Richard Moon, Deceased, Plaintiff-Appellant, v. GREG SMITH, d/b/a G.S. Construction, *et al.*, Defendants-Appellees.

Second District   No. 2—95—0275

Opinion filed December 8, 1995.

Devon C. Bruce and Todd A. Smith, both of Powers, Rogers & Smith, P.C., of Chicago, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, William R. Ketcham, of Brittain & Ketcham, P.C., of Elgin, and Douglas J. Pomatto and Charles D. McCann, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellees.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Jean Moon, the independent administrator of the estate of Timothy Moon, appeals from an order of the trial court which dismissed, apparently under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)), two counts of the plaintiff's complaint alleging negligence. We affirm.

At the time of the events leading to these proceedings, the defendants, Greg Smith, Linda Smith, and G.S. Construction, owned property on South River Road in McHenry County, Illinois (the property). Tanya Smith also lived with Greg and Linda Smith on the property. In addition to the Smith family's residence, G.S. Construction operated its business on the property.

The plaintiff alleged that on January 16, 1994, Greg Smith, or his authorized agent, tied nylon ropes, approximately one-quarter inch thick, between trees on the property. The ropes were allegedly put up to prevent access by snowmobiles to the property.

The plaintiff further alleged that on and before January 17, 1994, Tim Moon had been and was a friend and visitor to either the defendants or Tanya Smith. The plaintiff alleged that on January 17, 1994, Tim Moon was invited to the property to visit Tanya Smith and took his snowmobile. Tim Moon was struck in the neck by the nylon rope while operating his snowmobile on the property and died from his injuries on that date.

As executor of the estate of Tim Moon, the plaintiff brought this suit. Count I of the complaint was entitled "Wrongful Death—Negligence," count II was entitled "Survival—Negligence," count III was entitled "Wilful and Wanton—Wrongful Death," and count IV was entitled "Wilful and Wanton—Survival." The defendants' response asked that the trial court dismiss each count, though the defendants failed to cite to a section of the Code of Civil Procedure as authority for such dismissal. The trial court granted the motion to dismiss, apparently under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)), with respect to counts I and II. The trial court based its decision upon an exemption provision in the Snowmobile Registration and Safety Act (the Snowmobile Act) (625 ILCS 40/5—1(I) (West 1994)). Counts III and IV remained pending against all defendants.

Subsequently, defendant Tanya Smith moved for summary judgment (735 ILCS 5/2—1005 (West 1994)) as to counts III and IV. The trial court granted that motion, and a separate appeal is proceeding with respect to that order.

The defendants have filed a motion to strike portions of the plaintiff's brief on the basis that the plaintiff cites facts which came to light during Tanya Smith's summary judgment motion. Fairness to both the trial court and the parties dictates that this court consider only the record that was before the trial court. (*Continental Concrete Pipe Corp. v. Century Road Builders, Inc.* (1990), 195 Ill. App. 3d 1, 9-10). Thus, we grant the defendants' motion to strike, and we disregard those portions of the plaintiff's briefs which relate facts outside of the complaint.

The standards regarding our review of an order which grants a section 2—619 motion (735 ILCS 5/2—619 (West 1994)) are well established. Generally, section 2—619 (735 ILCS 5/2—619 (West 1994)) affords a means of obtaining a summary disposition of issues of law or easily proved issues of fact. (*Zedella v. Gibson* (1995), 165 Ill.

2d 181, 185; *Kubian v. Alexian Brothers Medical Center* (1995), 272 Ill. App. 3d 246, 249.) Section 2—619(a)(9) allows dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (735 ILCS 5/2—619(a)(9) (West 1994).) For purposes of a section 2—619 motion (735 ILCS 5/2—619 (West 1994)), all well-pleaded facts in the complaint are deemed admitted and only the legal sufficiency of the complaint is at issue. (*American National Bank & Trust Co. v. Village of Libertyville* (1995), 269 Ill. App. 3d 400, 403.) The question on appeal is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Zedella*, 165 Ill. 2d at 185-86, quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 116-17.

The trial court based its decision to dismiss the negligence counts upon the immunity provision in the Snowmobile Act (625 ILCS 40/5—1(I) (West 1994)). The provision provides, in pertinent part:

"I. Notwithstanding any other law to the contrary, an owner, lessee, or occupant of premises owes *no duty* of care to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any condition, use, structure or activity on such premises. *** Nothing in this section limits in any way liability which otherwise exists for *willful or malicious* failure to guard or warn against a dangerous condition, use, structure, or activity." (Emphasis added.) (625 ILCS 40/5—1(I) (West 1994).)

When construing a statute, a court must ascertain and give effect to the legislature's intent, the best indicator of which is the language of the statute itself. (*First of America Bank v. Netsch* (1995), 166 Ill. 2d 165, 181.) If the statutory language is clear, the court must give it effect without resorting to other aids of construction (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 479) and may not read into the statute exceptions, conditions, or limitations that the legislature did not express (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 83).

The plaintiff contends that the dismissal of the negligence counts should·be reversed because the immunity provision of the Snowmobile Act, which provides that a landowner "owes no duty of care to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any condition, use, structure or activity on such premises" (625 ILCS 40/5—1(I) (West 1994)), should not apply. The plaintiff also contends that her dismissed negligence counts fall within the exception to the immunity contained in that same subsection, specifically, that "[n]othing in this section limits in any way liability which otherwise exists for *willful or malicious* failure to guard

or warn against a dangerous condition, use, structure, or activity." (Emphasis added.) (625 ILCS 40/5—1(I) (West 1994).) We disagree with the plaintiff on both contentions.

Initially, we note that our supreme court has recently distinguished between negligence, willful and wanton misconduct, and intentional tort. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 272-76.) We will keep these distinctions in mind when interpreting the Snowmobile Act. 625 ILCS 40/1—1 *et seq.* (West 1994).

We determine that the plaintiff's negligence counts fall within the terms of the Snowmobile Act's exemption from liability. The first sentence of subsection (I) provides:

"[A]n owner, lessee, or occupant of premises owes *no duty* of care *to keep* the premises safe for entry or use by others for snowmobiling, *or to give warning* of any condition, use, structure or activity on such premises." (Emphasis added.) 625 ILCS 40/5—1(I) (West 1994).

Clearly, our legislature intended to immunize some conduct by passing this legislation. At common law, landowners owe no duty to remove conditions created naturally. (See *Graf v. St. Luke's Evangelical Lutheran Church* (1993), 253 Ill. App. 3d 588, 591 (a landowner owes no duty to remove natural conditions of water, ice, or snow).) Therefore, this statute must diminish a landowner's duty from removing artificially created conditions from his property. Further, the statute has eliminated a landowner's duty to warn snowmobilers about anything on his land. Also, in enacting this section of the Snowmobile Act, the legislature adopted a different standard of care for landowners, when dealing with snowmobilers, than is present under current Illinois law. *Ostergren v. Forest Preserve District* (1984), 104 Ill. 2d 128, 133-34; 740 ILCS 130/2 (West 1994) (a landowner owes a duty of reasonable care under the circumstances to invitees and licensees); *Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 452 (a landowner was found to owe a duty of reasonable care to a trespasser, though the court recognized that this finding represented a "slight departure from the traditional rule").

■ Because a landowner owes "no duty *** to give warning of any condition, use, structure or activity" (625 ILCS 40/5—1(I) (West 1994)) on his land, the plaintiff's allegations of negligence concerning a failure to warn of the nylon rope are precluded (625 ILCS 40/5—1(I) (West 1994)). Thus, the trial court did not err in dismissing the plaintiff's allegations of negligence concerning a failure to warn.

■ We also determine that the trial court did not err in dismissing the plaintiff's allegations of negligence concerning a negligent failure to guard. Apparently, there is no Illinois case law defining a

"failure to guard." However, Webster defines "guard" as "to protect from danger: DEFEND, SHIELD." (Webster's Third New International Dictionary 1007 (1986).) The language of subsection (I) removes the duty "to keep the premises safe for entry or use by others for snowmobiling." (625 ILCS 40/5—1(I) (West 1994).) We determine that failing to guard, or to protect others from danger, is subsumed within the language eliminating the duty to keep the premises safe.

We determine that the trial court also did not err in dismissing the plaintiff's other allegations of negligence, namely, that the defendants created a hazard by stringing a solitary rope between trees and that they failed to exercise reasonable care for the safety of persons coming upon their premises (collectively, hereinafter referred to as the creation of a hazard allegations). The Snowmobile Act reads: "[A]n owner, lessee, or occupant of premises owes *no duty* of care *to keep* the premises safe for entry or use by others for snowmobiling." (Emphasis added.) (625 ILCS 40/5—1(I) (West 1994).) The plaintiff maintains that by using the verb phrase "to keep," which is defined as to preserve or maintain (Webster's Third New International Dictionary 1235 (1986); see also Black's Law Dictionary 868 (6th ed. 1990)), the legislature intended to draw a distinction between statically maintaining one's property, for which liability would not attach, and creating hazards, for which liability would attach. We disagree.

■ The plaintiff's attempted semantic distinction fails. Once a structure, such as a fence, has been erected, to allow it to remain is to maintain said structure. Thus, if we were to adopt the plaintiff's rationale, liability would only attach where a snowmobiler crashed into a fence while the landowner was in the process of erecting the fence because, once erected, the fence is only being "kept" or maintained. Likewise, in the present case, it could be argued that the defendant was merely "keeping", or maintaining, the nylon rope as originally erected. We do not believe that our legislature intended such a random distinction, given the general purpose of the Snowmobile Act (625 ILCS 40/1—1 (West 1994) (to "promote safety for persons and property")). We must conclude that the legislature did not intend to produce an absurd result. *People v. Coleman* (1995), 166 Ill. 2d 247, 253.

Additionally, during oral argument before this court, the plaintiff agreed that a landowner's modification to his property is the key element to the landowner's "creation of a hazard." The plaintiff also maintained, however, that her argument, if adopted, would not prohibit a landowner from modifying his property. Instead, the plaintiff proposed that the modifications be analyzed, for "at some point,

practicality takes over." However, the plaintiff could not point out where this proposed analysis of modifications is located within the statute, nor did the plaintiff give any detail regarding the appropriate standards or bases of such an analysis.

■ Instead of adopting such an amorphous rationale, which does not have a basis in law, we determine that the language of the statute controls. Read in its totality, subsection (I) reveals that the legislature intended to immunize a landowner's *negligent* conduct towards snowmobilers, as more fully detailed below. The statute provides that *a landowner owes no duty of care to keep his premises safe* for entry or use by others for snowmobiling. Thus, the statute allows a landowner to keep his premises *unsafe* for snowmobiling and still not incur liability for negligent torts. The plaintiff's creation of a hazard allegations, sounding in negligence, relate to the defendant's duty "to keep the premises safe for entry or use by others." This duty has been abrogated by subsection (I) (625 ILCS 40/5—1(I) (West 1994)). Consequently, the trial court did not err in dismissing the plaintiff's creation of a hazard allegations sounding in negligence.

■ Arguing that subsection (I) should not apply to the case at bar, the plaintiff relies upon our supreme court's statement in *Ostergren* that subsection (I) "merely restricts the liability of landowners who would otherwise have to undertake massive repairs to make their property safe for snowmobiling." (*Ostergren*, 104 Ill. 2d at 134.) However, we note that the *sole* question the supreme court faced in *Ostergren* was whether subsection (I) was constitutional. (*Ostergren*, 104 Ill. 2d at 131.) Moreover, *Ostergren* also stated that our legislature "implemented a different standard of care for [landowners'] tort liability in snowmobile accidents" (*Ostergren*, 104 Ill. 2d at 133), which implies that our legislature intended negligence actions be barred and replaced by a different standard of care as contained in the exception to the immunity granted under subsection (I) (625 ILCS 40/5—1(I) (West 1994)).

■ We also determine that the exception to the immunity provided in the Snowmobile Act (625 ILCS 40/5—1(I) (West 1994)) does not countenance negligence counts in general, and the plaintiff's negligence counts in particular. The exception couches the standard of care in the two terms "willful or malicious." Malicious is synonymous with an intentional tort, which is not, nor can it be, negligence. The other term, "willful," has two possible connotations. "Willful" can be defined contextually either legally or nonlegally (layman). The distinction between the two definitions is noteworthy. The layman's definition of the term "willful" is "done deliberately: not accidental or without purpose: INTENTIONAL, SELF-DETERMINED." (Web-

ster's Third New International Dictionary 2617 (1986).) Thus, if "willful" were to be applied in this aspect, the exception at issue might include acts of negligence, for deliberate acts may yield liability in negligence. See, *e.g.*, *Topps v. Ferraro* (1992), 235 Ill. App. 3d 43, 47.

The legal definition of the term "willful" includes "wanton," "wantonly," "wantonness," "willfully," and "willfulness." (*Walldren Express & Van Co. v. Krug* (1920), 291 Ill. 472, 478.) One commentator has noted that the terms "willful," "wanton," and "reckless" have, in practice, been treated as meaning the same thing. (W. Keeton, Prosser & Keeton on Torts § 32, at 212 (5th ed. 1984).) After noting that Illinois courts have not been wholly consistent on the degree to which negligent acts are considered similar to willful and wanton behavior, our supreme court recently stated: "Our case law has sometimes used interchangeably the terms 'willful and wanton negligence,' 'gross negligence,' and 'willful and wanton conduct.' " (*Ziarko*, 161 Ill. 2d at 274-75 (and cases cited therein); see, *e.g.*, *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 429; *Spring v. Toledo, Peoria & Western R.R. Co.* (1977), 69 Ill. 2d 290.) Our supreme court has also stated that " '[n]egligence and willfulness are as unmixable as oil and water.' " (*Bartolucci v. Falleti* (1943), 382 Ill. 168, 176, quoting *Chicago, Rock Island & Pacific Ry. Co. v. Hamler* (1905), 215 Ill. 525, 540; see also *Samuels v. Checker Taxi Co.* (1979), 65 Ill. App. 3d 63, 67.) Indeed, " '[w]illful negligence' is as self-contradictory as 'guilty innocence.' " (*Chicago, Rock Island & Pacific Ry. Co.*, 215 Ill. at 540; see also *Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1021. But see *Topps*, 235 Ill. App. 3d at 47 (and cases cited therein).) Thus, a legal definition of the term "willful" is synonymous with the legal phrase "willful and wanton," and interpreting the term "willful" in the statute in its legal sense would mean that negligence actions would not fall within the rubric of the exception to the immunity provided in the Snowmobile Act (625 ILCS 40/5—1(I) (West 1994)).

■ We determine, for three reasons, that the term "willful" in the Snowmobile Act was intended by the legislature to refer to the legal definition of the term. First, when faced with a constitutional challenge to section 5—1 of the Snowmobile Act, including subsection (I) (625 ILCS 40/5—1(I) (West 1994)), our supreme court concluded that section 5—1 is a reasonable exercise of the State's police power and does not contravene a plaintiff's right to due process and equal protection. (*Ostergren*, 104 Ill. 2d at 133-34.) Our supreme court specifically noted that "the legislature has implemented a different standard of care for tort liability in snowmobile accidents," which is "justified due to the inherent danger of snowmobile opera-

tion in private lots, public parks and forest preserves." (*Ostergren*, 104 Ill. 2d at 133.) If our legislature intended that a different standard of care apply in tort for snowmobile accidents, then this indicates that the term "willful" is to be interpreted in its legal sense. Negligence, willful and wanton misconduct, and intentional tort are different standards of care, and, "[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." (*Ziarko*, 161 Ill. 2d at 275-76.) By allowing actions regarding a failure to guard or warn, sounding in willful and wanton misconduct or intentional tort, to continue, and specifically providing that a landowner otherwise owes *no duty* of care to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any condition, use, structure or activity on such premises (625 ILCS 40/5—1(I) (West 1994)), our legislature indicated that actions regarding a failure to guard or warn, sounding in ordinary negligence, are precluded.

■ Second, we are also persuaded that the term "willful" is to be interpreted in its legal sense because of the case law and legislative history of the Recreational Use of Land and Water Areas Act (Use Act), which originally provided:

"§ 6. Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." (Ill. Rev. Stat. 1985, ch. 70, par. 36.)

This language mirrors the language of the exemption to immunity granted under the Snowmobile Act (625 ILCS 40/5—1(I) (West 1994)). Until 1983, no cases had reason to interpret the language of the immunity under the Use Act. In 1983, the United States Court of Appeals for the Seventh Circuit, interpreting Illinois law, was presented with a claim alleging willful and wanton misconduct for failing to guard or warn an individual about subsurface rocks in a lake. (*Davis v. United States* (7th Cir. 1983), 716 F.2d 418, 422.) Writing for the majority, Judge Posner stated that, under Illinois law in 1983, a landowner owed a licensee the same duty of care as a trespasser, which was to avoid "willful or wanton injury." (*Davis*, 716 F.2d at 427.) Posner reasoned:

"[I]f the Use Act merely confined the landowner's liability to willful or wanton injuries, it would be codifying rather than modifying his common law liability, and that could not have been the legislators' intent." (*Davis*, 716 F.2d at 427.)

The Seventh Circuit concluded that something *greater* than willful and wanton misconduct must be pleaded in order to survive the "willful or malicious" language. (*Davis*, 716 F.2d at 426-27.) Thus, though they did not so state, the Seventh Circuit apparently interpreted the phrase "willful or malicious" to mean "willful *and* malicious."

The Illinois legislature subsequently amended the language of the Use Act, apparently as a direct response to *Davis*. (See *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 183.) In 1987, the exemption to immunity under the Use Act was changed to read:

> "Sec. 6. Nothing in this Act limits in any way any liability which otherwise exists:
>
> (a) For willful *and wanton* [not 'or malicious'] failure to guard or warn against a dangerous condition, use, structure, or activity." (Pub. Act 85—959, eff. December 8, 1987 (amending Ill. Rev. Stat. 1985, ch. 70, par. 36) (now codified, as amended, at 745 ILCS 65/6 (West 1994)).)

Thus, it appears the legislature was making it clear that the term "willful," as used in the Use Act as well as the Snowmobile Act, refers to a legal term of art, not a layman's definition of the term; that is, that "willful" is synonymous with "willful and wanton misconduct." Hence, it seems apparent that the legislature did not intend that negligence actions for failure to guard or warn fall under the rubric of the Snowmobile Act's exception to immunity, which provides, "[n]othing in this section limits in any way liability which otherwise exists for *willful or malicious* failure to guard or warn." (Emphasis added.) 625 ILCS 40/5—1(I) (West 1994).

The third reason is that application of the layman's definition of the term indicates that "willful," as applied to the failure to guard and the failure to warn, connotes a reckless disregard of the duty to guard or warn. Under the Snowmobile Act, liability is not limited for a landowner's "willful or malicious failure to guard or warn." (625 ILCS 40/5—1(I) (West 1994).) Applying the layman's definition of "willful" to the only two duties contained in the exception is consistent with willful and wanton misconduct. If one *willfully fails* to guard or warn, one has *reckless disregard* for the safety of others. Thus, the layman's definition of "willful" indicates that the exception to the immunity, as applied to the two duties, refers to a form of willful and wanton misconduct. (*Poole v. City of Rolling Meadows* (1995), 167 Ill. 2d 41, 47-50 (reckless acts, as well as intentional acts, may constitute willful and wanton misconduct); *Ziarko*, 161 Ill. 2d at 273.) Consequently, the "willful or malicious failure to guard or warn" exception to immunity in the last sentence of subsection (I) (625 ILCS 40/5—1(I) (West 1994)) is not applicable to the case at bar, where only negligence counts are alleged.

We briefly address the plaintiff's other arguments regarding the dismissal of her negligence counts. The plaintiff urges this court to differentiate between recreational snowmobiling and transportational snowmobiling, arguing that recreational snowmobiling falls within the ambit of the exemption, while snowmobiling for purposes of transportation, as was alleged in the present case, does not. We refuse to do so.

■ The alleged distinction between recreational and transportational snowmobiling is not found within the language of the Snowmobile Act. When construing a statute, a court must ascertain and give effect to the legislature's intent, the best indicator of which is the language of the statute itself. (*First of America Bank*, 166 Ill. 2d at 181.) Further, we may not read into the statute exceptions, conditions, or limitations that the legislature did not express. (*Solich*, 158 Ill. 2d at 83.) The Snowmobile Act merely states that a landowner "owes no duty of care to keep the premises safe for entry or use by others *for snowmobiling*." (Emphasis added.) (625 ILCS 40/5—1(I) (West 1994).) No distinction between recreational snowmobiling and snowmobiling as a mode of transportation is made. Moreover, the terms of the Snowmobile Act indicate that such a distinction may not be drawn, for the term "operate" is defined as "to ride in or on, other than as a passenger, use or control the operation of a snowmobile *in any manner*." (Emphasis added.) (625 ILCS 40/1—2.09 (West 1994).) Furthermore, the case upon which the plaintiff relies in urging this court to draw the distinction did, indeed, describe the parties' activity in that case as "recreational snowmobiling," but only in contrast to its discussion of snowmobiling as a sporting event. (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1096.) However, that court also rejected the theory that the operation of the Snowmobile Act depended upon the "nature of the use of the snowmobiles," instead holding that the language of sections 1—1 and 5—1 of the Snowmobile Act (625 ILCS 40/1—1, 5—1 (West 1994)) "covers all snowmobile activity" (*Casteel*, 109 Ill. App. 3d at 1098). Thus, no distinction between recreational and transportational snowmobiling may be drawn under the Snowmobile Act (625 ILCS 40/1—1 *et seq.* (West 1994)).

The plaintiff also argues that her negligence counts may be maintained because section 5—1(I) of the Snowmobile Act (625 ILCS 40/5—1(I) (West 1994)) does not apply to situations where the landowner does not make his land available to the public for snowmobiling. We disagree.

■ Whether a landowner makes his property available for snowmobiling is of no consequence for the determination of whether the

landowner's conduct is immunized under subsection (I) (625 ILCS 40/5—1(I) (West 1994)). The Snowmobile Act is clear that it is unlawful for a person to operate a snowmobile on "private property, without the written or verbal consent of the owner or lessee thereof." (625 ILCS 40/5—1(H) (West 1994).) However, subsection (I) of the Snowmobile Act is the subsection at issue, which states, "[n]otwithstanding any other law to the contrary, an owner, lessee, or occupant of premises owes no duty of care to keep the premises safe for entry or use by others." (625 ILCS 40/5—1(I) (West 1994).) No ambiguity exists within subsection (I) to indicate that subsection (I) applies only to situations where the landowner has opened his land to the public. (625 ILCS 40/5—1(I) (West 1994).) Assuming *arguendo* that such an ambiguity exists, the plaintiff's improperly cited language from the House debates does not reveal that subsection (I) was intended to apply only where a landowner opened up his land to the public. (83d Ill. Gen. Assem., House Proceedings, June 27, 1983, at 257-61.) Therefore, we disagree with the plaintiff's argument that the negligence counts should be allowed to continue because the defendants did not make their land available for snowmobiling. Consequently, we determine that the terms of subsection (I) provide immunity.

The plaintiff also argues that this court should recognize the trend in Illinois law to limit tort immunities and limit subsection (I) to the intent for which it was enacted. We decline to comment on the trend of Illinois law regarding immunities. As for the intent of the Snowmobile Act, the legislature has clearly set forth that the purpose is to "promote safety for persons and property." (625 ILCS 40/1—1 (West 1994).) However, as discussed above, the language of subsection (I) indicates that the legislature also clearly intended to provide landowners and occupiers with immunity for counts or actions sounding in negligence, such as the ones at bar. (625 ILCS 40/5—1(I) (West 1994).) In light of this precise language, we are not at liberty to read into the statute exceptions, conditions, or limitations. *Solich*, 158 Ill. 2d at 83.

We note that our decision today is with regard to *only* the negligence counts at issue. The plaintiff's counts sounding in willful and wanton misconduct remain pending below.

The judgment of the circuit court of McHenry County, to dismiss the plaintiff's counts sounding in negligence, is affirmed.

Affirmed.

GEIGER and THOMAS, JJ., concur.